142 N.J. Super. 410 (1976)
361 A.2d 606
ALTON MILLS AND MAGGIE MILLS, HIS WIFE, PLAINTIFFS,
v.
JOSEPH DORTCH, M.D., ELMER COMMUNITY HOSPITAL, K. DURAND, L. CERACIANO AND F. MC GONIGAL, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided May 25, 1976.
*412 Mr. Darrell Fineman for plaintiffs (Messrs. Kavesh, Basile & Fineman, attorneys).
Mr. Burchard V. Martin for defendant Dortsch (Messrs. Martin, Crawshaw & Mayfield, attorneys).
Mr. Edward E. Kuebler for defendants Elmer Community Hospital and L. Ceraciano.
*413 Mr. G. Henry Weston for defendant Durand (Messrs. Weston, Kravitz and Rank, attorneys).
DE SIMONE, J.C.C., Temporarily Assigned.
Plaintiffs move for leave to take the de bene esse videotape deposition of their expert, Dr. Eugene Klochkoff. They propose to use his testimony in their medical malpractice action against Dr. Dortch.
Dr. Klochoff is a practicing gynecologist residing in the City of New York. He neither treated nor examined Maggie Mills, the alleged victim of the malpractice; however, after reviewing the matter he advised plaintiffs' attorney that he would render an opinion with regard to the applicable standard of care and whether defendant Dortch deviated therefrom. Apparently, after rendering a written opinion, Dr. Klochkoff advised plaintiffs' attorney that because of the nature of his practice, the interests of his patients would suffer if he was forced to leave the immediate area of New York for any length of time, and that he would not travel to Southern New Jersey to testify at trial.[1]
Our rules (R. 4:16-1) provide for the use of a deposition at trial under the following circumstances:
At the trial * * * any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were then present and testifying, may be used in accordance with any of the following provisions:
* * * * * * * *
(c) The deposition of a witness, whether or not a party, may be used by any party for any purpose, against any other party *414 who was present or represented at the taking of the deposition or who had reasonable notice thereof if the court finds that the appearance of the witness cannot be obtained because he is * * * out of this state or because the party offering the deposition has been unable in the exercise of reasonable diligence to procure his attendance by subpoena, provided, however, that the absence of the witness was not procured or caused by the offering party. The deposition of an absent witness may also be so used if, upon application and notice, the court finds that such exceptional circumstances exist as to make such use desirable in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court.
Here, as in the leading case of Ross v. Lewin, 83 N.J. Super. 420 (App. Div. 1964), the combination of the witness' absence from the State, unprocured by the offering party, and the existence of exceptional circumstances compel the granting of plaintiff's motion. In Ross v. Lewin, the Appellate Division found no error in admitting into evidence the deposition of plaintiff in the form of answers to written interrogatories. Plaintiff was a "busy California attorney * * * about 3000 miles distant from the scene of trial. Thus, his being out of State and at such a great distance satisfied both the `out of the State' condition and the `exceptional circumstances' provision." Ibid., at 423.
Dr. Klochkoff is out of the State, and thus not subject to New Jersey process under the circumstances here. While he is not as far removed from the State as the California plaintiff in Ross, the absolute distances are relative. Given the constant emergent nature of his practice, one day away from his office may present as great a hardship to Dr. Klochkoff as one week away from his practice may have presented to the California attorney in Ross.
Defendant argues that by voluntarily choosing an out-of-state expert, plaintiffs have "procured" the absence of the witness from the State and thus cannot be heard to argue for the application of R. 4:16-1(c). However, the court is satisfied that plaintiffs did not knowingly engage an expert witness who would refuse to attend the trial, but rather were unaware of said expert's refusal until after the *415 expert's report had been rendered. Under these circumstances, plaintiffs cannot be said to have "procured" Dr. Klochkoff's absence from the state.
Furthermore, the court is aware of the great difficulty encountered in attempting to find local experts to testify in cases involving local defendants. This is ironically demonstrated by the fact that defendant's expert is also situated outside of New Jersey. Plaintiffs having secured an expert whom they believe adequately presents their case, it would certainly not now serve the interests of justice to prohibit use of that expert's opinion merely because plaintiffs learned subsequent to engaging the expert that he would not voluntarily personally appear. A trial, after all, is a search for the truth. State v. Butler, 27 N.J. 560 (1958).
The court thus finds that due to the exceptional circumstances surrounding this case and the present absence of Dr. Klochkoff from the State, it is to be anticipated that he will be unavailable for personal testimony at the time of trial. In light of this anticipated unavailability, plaintiffs' motion for leave to take his de bene esse deposition will be granted.
However, this court does not pass upon the admissibility of the deposition at the time of trial, for such admissibility depends upon the circumstances which exist at the time the deposition is offered. Goldstein v. Pennsylvania Greyhound Lines, 23 N.J. Super. 126, 130 (1952). A proper foundation for admission must be laid at trial; i.e., plaintiffs must demonstrate that Dr. Klochkoff continues to be unavailable and that his continued absence has not been procured by them. Ibid; R. 4:16-1.
Having decided that plaintiffs may conduct the de bene esse deposition, it remains to be seen whether Dr. Klochkoff's testimony may properly be recorded by videotape.
Our current court rules do not specifically provide for videotaping a pretrial deposition. However, nothing in our court rules prohibits videotaping a deposition. In Blumberg v. Dornbusch, 139 N.J. Super. 433 (App. Div. 1976), the *416 Appellate Division expressed the opinion that videotape as a method of pretrial discovery or trial procedure should not be rejected unless some rule of court expressly precludes its use.
Other jurisdictions working, as we are, without a rule of court specifically allowing the videotaping of a deposition, have permitted such recordings of depositions and their use at trial providing their content is otherwise competent, material and relevant. State v. Moss, 498 S.W.2d 289 (Mo. Sup. Ct. 1973); Rubino v. G.D. Searle Co., 73 Misc.2d 447, 340 N.Y.S.2d 574 (Sup. Ct. 1973); St. ex rel. Johnson v. Milwaukee Cty. Cir. Ct., 61 Wis.2d 1, 212 N.W.2d 1 (Sup. Ct. 1972); see Annotation, "Use of Videotape to take Deposition for Presentation at Civil Trial in State Court," 66 A.L.R.3d 637.
The federal courts, pursuant to newly promulgated R. 30(b) (4), have permitted videotaping of discovery procedures for the purpose of aiding the trier of fact by presenting an audiovisual record and by avoiding the tedium necessarily attendant upon the laborious reading of a deposition at trial. Carson v. Burlington Northern, Inc., 52 F.R.D. 492, 493 (D. Neb. 1971); Colonial Times, Inc. v. LaFatch 509 F.2d 517 (D.C. Cir.1975), and extensive citations therein at footnotes 10 and 11; cf. United States v. LaFatch, 382 F. Supp. 630 (N.D. Ohio E.D. 1974).
Defendant argues that use of videotape will be highly prejudicial to his client because the jury will place excessive emphasis thereon, and because videotape is not invariably capable of replacing personally given testimony.
A deposition is secondary evidence, and its use is subject to the contingency that the witness is not available to testify. Goldstein v. Penna. Greyhound Lines, Inc., supra. However, should it be determined that the witness is unavailable, it is incumbent upon the parties to the proceeding to place before the jury the most accurate representation of the absent witness' testimony as can be had. While numerous *417 problems necessarily attend the use of videotape, the method appears to "provide[s] as close an approximation to the actual presence of the witness in court as can be done. This, in turn, accomplishes the desirable result of placing the jury in a better position to carry out their function of assessing the credibility of the witness than does the reading of a written deposition." State v. Moss, supra, 498 S.W.2d at 292; Carson v. Burlington Northern, Inc., supra; U.S. v. LaFatch, supra.
Furthermore, videotape is not such a novelty on the contemporary scene or in the courtroom that its use should be assumed to be prejudicial. See Blumberg v. Dornbusch, supra.
Defendant further argues that he will not be able to conduct an effective cross-examination because Dr. Klochkoff will not be testifying with regard to facts already in evidence, and that there will be no opportunity for impeachment because no earlier discovery deposition will present testimony upon which Dr. Klochkoff may be cross-examined. These are problems which are not distinguishable from any situation in which leave to take a de bene esse deposition is granted. Furthermore, these are problems which can be resolved: a discovery deposition may be had prior to the videotape deposition. This will enable defendant to deal with the problems of cross-examination and opportunity for impeachment.
The videotape method is not perfect, but then no method is. We ought not test and destroy the method by standards of needless and nonexistent perfection. See Marlboro Products Corp. v. Northern American Philips Corp., 55 F.R.D. 487 (S.D. New York 1972).
Once the discovery deposition, if one is desired, is conducted, plaintiffs and defendant shall agree on the time and place of and the type video equipment for videotaping the deposition.
*418 The court will not at this time concern itself with the mechanics involved in videotaping Dr. Klochkoff's testimony. Rather, the court will enlist counsel for both parties, in their capacity as officers of the court, to agree upon guidelines which will fairly implement this opinion.
However, in an effort to expedite the discovery procedure, the court suggests that a review by counsel of the provisions of the Report of the Supreme Court Committee on Relations with the Medical Profession and of the proposed rule submitted by the New Jersey State Bar Association's Committee on Videotape may reveal useful guidelines.
The court further suggests that the most appropriate place for conducting the de bene esse deposition is a courtroom, with the witness being deposed in an actual witness stand. Thus, conveying the sanctity of the courtroom will mitigate any possible prejudice arising from the use of the audiovisual de bene esse deposition.
Costs of the videotape proceedings, including a reasonable fee for defendant's attorney, shall be borne by plaintiffs. No fee for the discovery deposition shall be allowed since such a procedure is normally pursued in the course of discovery.
Live testimony continues to be the best evidence. However, where the interests of justice require innovation, the administration of justice must be equal to the task.
The videotape de bene esse deposition of Dr. Klochkoff may be taken pursuant to this opinion. Unless waived by the parties, the deposition shall be recorded by the usual stenographic method as well as by videotape, in order to protect the parties against mechanical defects.
NOTES
[1] See brief and affidavit of plaintiffs' attorney attached to plaintiffs' Notice of Motion. For purposes of this motion the court will take as true the uncontradicted statements of fact set forth in the moving papers.

The circumstances under which a party becomes aware that his expert will not testify in person may bear upon the propriety of granting a motion for a de bene esse deposition. It appears in the present case that plaintiffs' attorney did not become aware that Dr. Klochkoff had no intention of attending trial until after his services had been engaged and after his expert report had been rendered.