[No. 1364-3.  Division Three.  June 8, 1976.]

BENJAMIN S. CRISP, ET AL, *Appellants*, v. NURSING HOMES, INC., *Respondent*.

*Robert S. Day* and *Peterson, Taylor, Day & Shea,* for appellants.

*Norman R. Nashem, Jr.,* and *Nashem, Prediletto, Brooks & Schussler,* for respondent.

GREEN, J.—Plaintiff brought this action to recover for injuries that occurred when she slipped on some applesauce and fell on the dining room floor of the defendant nursing home. From a verdict for defendant, plaintiff appeals.

Error is assigned to the trial court's (1) admission of certain evidence for purposes of impeachment; and (2) submission of the issue of contributory negligence to the jury. We affirm.

The evidence to which error is assigned arose in the following circumstances. On direct examination, plaintiff testified that she earned an average wage of $522 per month for the 5-year period immediately preceding her accident on March 12, 1971. On cross-examination, she was queried:

Q . . . Just this morning I think you testified that this five year average—we are talking about the $522 per month that was an average of five years prior to the accident.
A Yes, sir.
Q˙ That would have included the two years or so that you worked as an R.N.?
A Yes, sir.
Q Now, when you first applied for work at Whitman Manor, that was in what—I think August or September of '69?
A Yes, sir.
Q And you applied for work as an R.N., did you not?
A Yes, sir.
Q And you applied under the name Vieva Squire Crisp?

Plaintiff objected to the last question, contending the inquiry was an attempt to impeach her on a collateral matter and, therefore, was improper. After considerable discussion, defendant made the following offer of proof:

Your Honor, I . . . offer to prove through the cross-examination of the witness, and also by extrinsic evidence, that she [plaintiff] used the nursing school credentials of another woman to apply for and obtain a

Washington State R.N. license in 1969, shortly before she went to work for Whitman Manor Nursing Home [defendant]. She used the name of a woman who is apparently an aunt by the name of Vieva Squire, who had in fact graduated from nursing school in Pendleton.

And she admitted that during the time she was employed at the Whitman Manor Nursing Home when an investigator from the State came out to look into this. She made various statements to him. In the course of the investigation, in an attempt to retain her license, she signed this affidavit, which I will hand up, Your Honor, and which states she was born November 15, 1923, at Grand Junction, Colorado, as Vieva Lorraine Squier, and it goes on to say she received a nurse's diploma and was married to three different gentlemen.

Now, we already have evidence in this case. Your Honor, that she was born in January of—January 11th of '23, that she's only been married once, and that she did not graduate from St. Anthony's Hospital.

And I have a copy, a certified copy of her birth certificate showing she was born January 11, 1923, and that her name was Mildred; and I have a copy of another certified birth certificate—both from Colorado—showing that that's the birth certificate of the other woman who was born on the date set forth in the affidavit, namely November 15, 1923, at Grand Junction, Colorado. You will note that the mother of one and the father of the other are apparently related since their names are both Devine.

And finally, Your Honor, I will offer to prove—and it's set forth in Identification "50", which are copies of the Findings of Facts, Conclusion, and Order Revoking License from the Washington State Board of Professional Nurse Registration, and I refer you particularly to the Findings and Conclusion—that's the page underneath the one you are looking at—which recites that there was a hearing held on July 31, 1970, in Seattle; that Mildred Crisp appeared at that time; and, quote, "And the said Mildred Crisp having acknowledged before the Board that she used the credentials of another person in applying for licensing in the State of Washington," end quote.

That's the sum and substance of it, Your Honor. It seems to me I am entitled to bring it out because it is relevant for the reasons I have indicated, and it certainly goes to her credibility.

Thereafter, the following colloquy occurred, and the objection was overruled:

THE COURT: Mr. Nashem, is your client [defendant] going to testify that she was hired as an R.N.?

MR. NASHEM: Yes, sir, and that she displayed a license as such.

MR. PETERSON: That's got nothing to do with the injury.

THE COURT: I am going to overrule the objection. There is testimony in here as to her married life and date of birth. These instruments are directly in conflict with that.

Testimony substantially in accord with the offer of proof was then elicited from the plaintiff.[1]

█ In support of plaintiff's contention that the court erroneously permitted impeachment upon a collateral matter, plaintiff relies upon *Warren v. Hynes*, 4 Wn.2d 128, 102 P.2d 691 (1940), wherein the court stated, at page 133:

The rule is firmly established in this state that a witness cannot be impeached by showing the falsity of his testimony concerning facts collateral to the issue. In such matters, the party cross-examining the witness is concluded by the answers given.

and at page 137:

Evidence of particular acts of misconduct which tends to disgrace a witness cannot be elicited from such witness on cross-examination for the purpose of impeaching him, any more than it can by the testimony of other witnesses. The character of witnesses may not be discredited on

---

[1] In a sworn affidavit before a notary public, submitted to the State, dated March 18, 1970, plaintiff stated:

1. I was born November 15, 1923, at Grand Junction, Colorado, as VIEVA LORRAINE SQUIER, but at an early age I changed my first name to MILDRED because of unpleasant nicknames used by my schoolmates concerning my first name of VIEVA.

2. I received a nurses diploma from St. Anthony Hospital, Pendleton, Oregon, in 1947, and became a registered nurse.

3. I have been married to MR. FRANK LYBECKER and to MR. G. LAUNDER and am now married to MR. BENJAMIN S. CRISP.

(Exhibit 48.)

The falsity of this affidavit was clearly demonstrated in plaintiff's testimony and birth certificates (Exhibits 47, 49).

cross-examination by questions as to whether they had committed specific criminal acts.

While recognizing these well established rules, the court also noted at page 132:

Whether a matter is collateral within the meaning of the rule is whether it is admissible for any purpose independently of the contradiction.

"The test as to whether a matter is material or collateral, within the meaning of the rule, is whether the cross-examining party is entitled to prove it in support of his case." *State v. Johnson*, 192 Wash. 467, 73 P. (2d) 1342.

Here, we find the evidence was not collateral but was material and relevant and could have been proved by defendant to rebut plaintiff's testimony regarding the amount of her damages.

Plaintiff testified that in computing her average monthly income, she included earnings received as a registered nurse. This testimony formed the basis for the computation of her claimed loss of future earnings and was utilized in plaintiff's closing argument as the high range of her recovery. The low range was based upon her earnings as a medical records clerk. In defending against plaintiff's claim for future loss of earnings based upon her prior earnings as a registered nurse, the only option available was to establish that she was not entitled to these higher earnings because she was never qualified as a registered nurse. Consequently, this cross-examination of plaintiff and use of her prior affidavit were relevant and material to the measure of damages.

Plaintiff argues that even if defendant was entitled to show that plaintiff was never a registered nurse, the trial court abused its discretion in allowing the cross-examination to go into contradictions about the number of plaintiff's marriages, her birth date, and the use of a relative's credentials in obtaining a nursing license. It is contended that these matters were improperly admitted as collateral to the issue of negligence, and that this cross-examination

was for the sole purpose of impeaching plaintiff's moral character. We disagree.

On cross-examination, plaintiff testified that when she applied for employment with the defendant, she presented a registered nurse's license under a different name. Later, she submitted a false affidavit to the State in an attempt to retain that license. Mrs. Choban, a nurse at the nursing home and a witness for plaintiff, testified that plaintiff told her she could not obtain a license as a nurse because of her health. Mr. Bohlman, operator of the defendant nursing home, testified that plaintiff first told him she was losing her license because of her health, and later "she said something about the records were mixed-up," and that "she was going to fight for her license." Consequently, he thought her license was being taken away unfairly. We find that the cross-examination of plaintiff as to marriage, birth date, etc., were inextricably interwoven in the rebuttal evidence establishing that she was not entitled to recover future earnings based upon prior earnings as a registered nurse. Therefore, we find no abuse of discretion in allowing the cross-examination.

Further, the cross-examination was admissible on the question of plaintiff's credibility. In 3A J. Wigmore, *Evidence in Trials at Common Law* § 957 (rev. ed. 1970), the writer states:

A willingness to swear falsely is, beyond any question, admissible as negativing the presence of that sense of moral duty to speak truly which is at the foundation of the theory of testimonial evidence.

In *Pullman Co. v. Hall*, 55 F.2d 139 (4th Cir. 1932), the court said, at page 141:

The rule is that for the purpose of impeaching the credibility of a witness he may be questioned as to misconduct, even as to collateral matters, which has a tendency to show his lack of honesty or truthfulness; the qualification of the rule being that the party questioning him is bound by his answers and may not contradict him with regard thereto. [Citing authorities.] It is said that it was within the discretion of the trial judge whether questions

would be permitted as to acts of misconduct affecting credibility. We think, however, that the matter resting within the discretion of the judge is merely the extent to which such examination may be pursued. To refuse the right to examine at all with respect to such matters is reversible error.

*See also Simon v. United States*, 123 F.2d 80 (4th Cir. 1941), *cert. denied*, 314 U.S. 694, 86 L. Ed. 555, 62 S. Ct. 412 (1941).

■ Finally, defendant contends the issue of contributory negligence should not have been submitted to the jury. As the court said in *Bauman v. Complita*, 66 Wn.2d 496, 497, 403 P.2d 347 (1965):

> The issue of contributory negligence is generally one for the jury to determine from all the facts and circumstances of the particular case. *It is only in rare cases that the court is justified in withdrawing the issue of contributory negligence from the jury.*

(Italics ours.) The evidence reveals that plaintiff knew patients often spilled food on the dining room floor during mealtime. Plaintiff contends that at the time of the fall the dining room had been cleaned up; however, there is evidence from which the jury could conclude otherwise. Therefore, issues of fact were presented as to whether the dining room had been cleaned up prior to plaintiff's entry, and whether plaintiff was contributorially negligent. Thus, the instruction was proper.

Affirmed.

MCINTURFF, C.J., and MUNSON, J., concur.