[No. 47466-4. En Banc. February 11, 1982.]

MARTHA MARY BERTSCH, *Petitioner, v.* GAYLE F. BREWER, ET AL, *Respondents.*

*Critchlow & Williams,* by *David E. Williams,* for petitioner.

*William H. Mays* and *West H. Campbell* (of *Gavin, Robinson, Kendrick, Redman & Mays*), for respondents.

DORE, J.—Mary Martha Bertsch, plaintiff below, appeals from a judgment of dismissal for defendant Dr. Gayle F. Brewer in a medical malpractice case. We reverse, holding that the trial court committed prejudicial error in admitting into evidence a psychological personality inventory derogatory to Bertsch.

Bertsch brought suit against Brewer in Superior Court for Yakima County, alleging medical malpractice and violation of the doctrine of informed consent. Bertsch based the malpractice suit on her allegations that Brewer, in treating her for a thyroid condition, negligently removed her thy-

roid, causing serious damage which will require continued medication for the remainder of her life.

During the trial, a psychological personality profile called a "Minnesota Multiphasic Personality Inventory" (MMPI), (apparently given to Bertsch at Mayo Clinic and transferred by her to her doctor with other medical records) was admitted into evidence, over strong objections. The personality profile stated in part:

> Very immature, demanding and egocentric. Fixed notions as to organic basis for complaints. These complaints, which probably fit no organic pattern are likely to be presented in a histrionic manner. Lacks insight and is unlikely to accept a psychological explanation of symptoms. Even though patients with this type of profile are prone to develop functional complaints the possibility of organic disease cannot be excluded. Moderately to severely depressed and pessimistic. Considerable number of physical complaints. Prominent concern with bodily functions.

This personality profile was marked and admitted as a separate exhibit which was taken into the jury room.

The trial judge denied Bertsch's motion for a directed verdict on informed consent and instructed the jury as to contributory negligence. The jury returned a verdict in favor of the doctor. On appeal, the Court of Appeals affirmed the decision. Bertsch now raises the same issues previously considered by the Court of Appeals.

## I

We turn first to the issue of the court's admittance of the Minnesota Multiphasic Personality Inventory under ER 801(d)(2) and ER 803(a)(4) of the Washington Rules of Evidence. ER 801(d)(2) excepts from the definition of hearsay any statement which is

> offered against a party and is (i) his own statement, in either his individual or a representative capacity or (ii) a statement of which he has manifested his adoption or belief in its truth, or (iii) a statement by a person authorized by him to make a statement concerning the subject, or (iv) a statement by his agent or servant acting

within the scope of his authority to make the statement for the party, or (v) a statement by a co–conspirator of a party during the course and in furtherance of the conspiracy.

The trial judge presumably found, under subsection (ii), that the MMPI was a statement which Bertsch manifestly adopted and believed to be true. However, the facts surrounding the transmittal of the personality test from the Mayo Clinic to Bertsch to her doctor indicate that she did *not* adopt the test contents as being true or at least did not assertively believe in its truth. The evidence indicates that Bertsch took a battery of tests. It was not pointed out to her as a separate personality or psychology test. The test was given to her in a packet of 31 pages of Mayo Clinic materials, which included the results of various medical tests she had taken while at the clinic. There is no evidence or inference from evidence that Bertsch read the result of such test, or even saw it. She was merely a message carrier. We, therefore, conclude that ER 801(d)(2) did not qualify the admittance of such test at trial.

Under Washington Rule of Evidence 803(a)(4),

Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment

are excepted from the rule against hearsay. This subsection changes Washington law. Previously, statements of past symptoms and statements relating to medical history, even though made to a treating physician, have been inadmissible as independent substantive evidence. *Smith v. Ernst Hardware Co.,* 61 Wn.2d 75, 377 P.2d 258 (1962). More recently, statements made to a treating or nontreating physician have been allowed into evidence, but only for the purpose of supporting the physician's medical conclusions. *Kennedy v. Monroe,* 15 Wn. App. 39, 547 P.2d 899 (1976). The rationale for the current rule is the patient's motiva-

tion to be truthful. 5 R. Meisenholder, Wash. Prac. § 472 (1965 & Supp. 1979).

 This exception to the hearsay rule is meant to apply to statements made by a patient in the course of the doctor's diagnosis, and pursuant to the doctor's diagnostic procedures, as the trial judge himself pointed out when ruling to admit the personality profile. Brewer testified that he "vaguely remembered" looking at the MMPI, but that he didn't "put a lot of faith in psychological testing." Given this testimony, a strong inference is established that he didn't use the test in making his diagnosis. ER 803(a)(4) cannot be applied in this situation.

Alternatively, even if the personality profile was admissible against Bertsch in cross–examination, Brewer did not establish a proper foundation to permit its consideration. Administration of the test is fairly complex, and the standards by which the test results are measured and interpreted are difficult to understand. There was no testimony as to who administered the test to Bertsch or how the results were reached; the accuracy, validity and meaning of the test results were not established. Therefore, even if the MMPI were otherwise admissible under Washington Rules of Evidence 801(d)(2) or 803(a)(4), the defense did not lay a proper foundation to establish its admissibility. Additionally, the test results are too highly inflammatory and prejudicial to be admissible. Washington Rule of Evidence 403, designed to exclude evidence, states:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

The comment to this rule states in part:

> In deciding whether to exclude evidence on grounds of unfair prejudice, consideration should be given to the probable effectiveness or lack of effectiveness of a limiting instruction. The availability of other means of proof may also be an appropriate factor.

*See also State v. Oughton,* 26 Wn. App. 74, 612 P.2d 812 (1980); *State v. Barry,* 25 Wn. App. 751, 611 P.2d 1262 (1980); *State v. Stevenson,* 16 Wn. App. 341, 555 P.2d 1004 (1976).

█ Brewer's argument that the document related only to the issue of damages, rendering the error harmless because the jury never reached the issue of damages, is not persuasive. Error relating *solely* to the issue of damages is harmless when a proper jury verdict reflects nonliability. *American Oil Co. v. Columbia Oil Co.,* 88 Wn.2d 835, 567 P.2d 637 (1977); *Okkerse v. Westgate Mobile Homes, Inc.,* 18 Wn. App. 45, 566 P.2d 944 (1977); *Hansen v. Wightman,* 14 Wn. App. 78, 538 P.2d 1238 (1975); *Stuart v. Consolidated Foods Corp.,* 6 Wn. App. 841, 496 P.2d 527 (1972); *Larson v. Puyallup Sch. Dist. 3,* 7 Wn. App. 736, 502 P.2d 1258 (1972). Washington courts, in the above cases, have found evidence "relating solely to the issue of damages" to include the fact of the remarriage of a widow in a wrongful death action, a medical opinion regarding the future ramifications of a child's injury, an instruction on damages, and the value of a mobile home which had been damaged.

In the present case, it is unrealistic to conclude the jurors related the contents of the personality profile solely to the damages issue, especially in the absence of an instruction to that effect. It was taken into the jury room during deliberations. The fact that the profile was a separate exhibit made it even more noticeable and damaging than the other Mayo Clinic records. The derogatory description of Bertsch undoubtedly prejudiced the jurors as to Bertsch's credibility, which reflected directly on many crucial issues, including informed consent, the causal relationship between Brewer's treatment and Bertsch's recurring symptoms, and contributory negligence. To assume that the jurors could relate the description of Bertsch solely to the issue of damages, even if a limiting instruction had been given, is naive and unrealistic. The admission of such a personality profile into evidence constituted prejudicial error, necessitating a new trial.

## II

As we are granting a new trial, we believe it would be helpful if we comment on the nonadmission of the deposition of a doctor who later appeared on Brewer's behalf, as the issue may surface again on retrial. Washington court rule CR 32(a) states:

(3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: . . . (B) that the witness resides out of the county and more than 20 miles from the place of trial, unless it appears that the absence of the witness was procured by the party offering the deposition; . . .

This provision is predicated upon the unavailability of the deponent–witness to testify at trial. *Vannoy v. Pacific Power & Light Co.,* 59 Wn.2d 623, 369 P.2d 848 (1962). The Court of Appeals stated in *Hammond v. Braden,* 16 Wn. App. 773, 559 P.2d 1357 (1977) that although Washington has not ruled directly on the question of the point at which the deponent must be unavailable in order for his deposition to be admitted as a substitute for his testimony, other states have held that the unavailability of the deponent is to be determined at the time his deposition is offered into evidence. *See Schmitt v. Jenkins Truck Lines, Inc.,* 170 N.W.2d 632 (Iowa 1969); *Mills v. Dortch,* 142 N.J. Super. 410, 361 A.2d 606 (1976). These cases all involved witnesses who had testified at trial *prior* to attempted introduction of their depositions. In the present case, the deponent–witness was not present in court and had not been present previously.

The requirements of CR 32(a)(3)(B) were met, because the deponent–witness lived out of the county and more than 20 miles away. Additionally, Bertsch did not cause the absence of the witness. Counsel for Bertsch offered economy as the reason for using the deposition rather than calling the witness to testify in person. Where an attorney is within the rules, he is free to try his case in his own manner. Here, the deponent was a doctor with information vital to the malpractice case. The briefs suggest

that the doctor gave a more favorable impression of Bertsch's case in the deposition than could be expected as a live witness at the trial. Therefore, it was Bertsch's tactical prerogative to introduce the doctor's deposition under CR 32(a)(3), rather than produce the doctor for live testimony. Unfortunately, Bertsch did not object to the judge's refusal to allow the admission of the deposition; therefore, she waived her right to appeal this error in the subject appeal.

## III

The trial court properly denied Bertsch's motion for a directed verdict on the issue of informed consent. Bertsch asserted that she was entitled to the directed verdict on the basis that Brewer neglected to inform her of test results from a laboratory indicating that her thyroid was normal, and that she was not sufficiently informed of the possible adverse consequences of the treatment. Brewer claimed that a directed verdict was inappropriate because an obvious question of fact arose, based on the testimonies of the parties regarding their discussions of alternative forms of treatment and their risks.

A motion for a directed verdict may be granted only if it can be said, as a matter of law, that no evidence or reasonable inferences existed to sustain a verdict for the party opposing the motion. The evidence must be considered in the light most favorable to the nonmoving party. *Rhoades v. DeRosier*, 14 Wn. App. 946, 546 P.2d 930 (1976); *Kaiser v. Suburban Transp. Sys.*, 65 Wn.2d 461, 398 P.2d 14 (1965).

To impose liability upon a physician under the informed consent doctrine, the plaintiff must prove: (1) the physician failed to inform the patient of a material fact relating to treatment; (2) the patient consented to treatment without being aware of that fact; (3) a reasonably prudent patient under similar circumstances would not have consented given such information; and (4) the treatment in question proximately caused injury to the patient. RCW 7.70.050; *Gates v. Jensen*, 92 Wn.2d 246, 595 P.2d 919 (1979); *Holt v.*

*Nelson,* 11 Wn. App. 230, 523 P.2d 211 (1974).

Both Bertsch and Brewer testified there was a discussion of alternative forms of treatment and their risks. Considering both their testimonies, a jury could have failed to find any one of the four necessary elements of liability under the informed consent doctrine. Therefore, as there were disputed facts, the trial court was correct in denying Bertsch's motion for a directed verdict on this issue.

## IV

Bertsch asserts there was no evidence from which the jury could reasonably determine that she was contributorily negligent in some manner which caused, or contributed to cause, the destruction of her thyroid gland. She further states that the instructions to the jury regarding contributory negligence were such prejudicial error that a new trial was warranted. Brewer contends that there was evidence which could have led the jury to find contributory negligence, and that the jury was, therefore, properly instructed as to this issue.

The Washington rule on contributory negligence was stated in *Crisp v. Nursing Homes, Inc.,* 15 Wn. App. 599, 605, 550 P.2d 718 (1976), quoting from *Bauman v. Complita,* 66 Wn.2d 496, 497, 403 P.2d 347 (1965):

> The issue of contributory negligence is generally one for the jury to determine from all the facts and circumstances of the particular case. *It is only in rare cases that the court is justified in withdrawing the issue of contributory negligence from the jury.*

Before the trial court can remove contributory negligence from the jury's consideration, the evidence must be such that all reasonable minds would agree that the plaintiff had exercised the care which a reasonably prudent man would have exercised for his own safety under the circumstances. *Poston v. Mathers,* 77 Wn.2d 329, 331, 462 P.2d 222 (1969). In the present case, the respondent asserts that testimony regarding the failure of Bertsch to keep a scheduled follow-up appointment could lead the jury to conclude Bertsch

was contributorially negligent. This evidence, however, is related to the issue of damages rather than liability. The jury found no negligence on Brewer's part and, therefore, never reached the issue of Bertsch's contributory negligence. The instruction and special verdict form used clearly informed the jury that the issue of contributory negligence was not to be considered until an initial conclusion as to Brewer's negligence had been made. Because the jury found no negligence on Brewer's part, they presumably never reached the issue of Bertsch's contributory negligence. *See Municipality of Metro Seattle v. Kenmore Properties, Inc.,* 67 Wn.2d 923, 410 P.2d 790 (1966). The error, if any, was harmless.

## Conclusion

The Minnesota Multiphasic Personality Inventory, which the trial court admitted into evidence, was prejudicial to Bertsch and tainted her malpractice claims against Brewer, constituting prejudicial error. We reverse the Court of Appeals and remand for a new trial in accordance with the provisions of this decision.

BRACHTENBACH, C.J., and ROSELLINI, STAFFORD, UTTER, DOLLIVER, WILLIAMS, and DIMMICK, JJ., concur.