[No. 33602. *En Banc.* January 16, 1958.]

BONNIE M. COATS *et al., Appellants,* v. LEE & EASTES, INC., *et al., Respondents.*[1]

[1]Reported in 320 P. (2d) 292.

*Tonkoff, Holst & Hopp, Robert I. Bounds*, and *Elwood Hutcheson*, for appellants.

*Kern, Dano & Cone*, for respondents.

SCHWELLENBACH, J.—This is a personal injury action. The jury rendered verdicts for both of the defendants on their cross-complaints. A motion for new trial based on all statutory grounds was denied. This appeal is limited to one issue, the alleged employment of a private investigator to shadow one of the jurors during the trial.

The appeal comes to us on a short record. The trial court certified the following points relied upon by appellants:

"I. Employment by defendants' liability insurance carrier and concurred in by defendants' counsel of record of a private investigator to shadow and tail a duly impaneled juror while serving as such during the course of the trial in a case in which the liability insurance carrier was exposed to liability and which shadowing the juror was aware of and which annoyed and disturbed the juror and made the juror apprehensive constitutes misconduct requiring the trial court to grant plaintiffs' motion for a new trial based upon misconduct of the defendants, defendants' counsel and insurance company.

"II. The court erred in refusing to grant plaintiffs' motion for new trial upon the affidavits made in support thereof and in opposition thereto and entering judgment in favor of the defendants."

In order that there can be no question as to the facts, we deem it necessary to quote the affidavits submitted to the trial court in support of, and opposed to, the motion for new trial.

IN SUPPORT OF MOTION:

"DOMINGO M. FLORES, being first duly sworn, on oath deposes and says:

"That he is of the age of 35 years and is presently employed as a Chef at the Strand Cafe located at 14 North 1st Street, in the City of Yakima, Washington; that he was so employed while the above entitled case was in progress, he was contacted at the above mentioned restaurant by a person identifying himself as an investigator interested in the trial of the above-entitled case; he stated that he was inter-

ested in the activities of one Leonard A. LaCombe, also known as Duke LaCombe, who was then serving as a juror in the case then in progress which was the above-entitled case, and further stated that he had shadowed the said Duke LaCombe on a previous night, which was also during the time the trial was in progress; he stated, amongst other things, that he had never let Duke LaCombe's automobile out of sight and had trailed Duke LaCombe to the Strand Cafe on the evening in question at which time a party was being held at the Strand Cafe and attended by Duke La-Combe; that he then asked me if one Albert Schell was at the party; at that time I knew Albert Schell by sight only and did not recognize him by name; after informing him of this fact, he asked me to attend Court in Judge Barnett's Department and to meet a George Bremer there; I did attend Court a day or two later, at which time I did not see Mr. Bremer but at which time I was spoken to by a person I believe to be one of the attorneys in the case whose name I do not now know but whom I understand to be an attorney for the Defendant, Lee & Eastes, Inc. and who seemed to be acting as an attorney in the case while I was in the courtroom; the attorney pointed out Mr. Albert Schell and asked me if he had attended Duke LaCombe's party at the Strand Cafe on Friday night; I answered 'no' and there was no further conversation; at a later time, either the same day as the occurrence in the courtroom which I have just mentioned, or the following day, the investigator again appeared at the Strand Cafe and asked me if I recognized or would recognize Albert Schell and asked me if he was at the party on the previous night, which party had been given by Duke La-Combe; I answered in the negative; during the weekend of May 14 and 15, the investigator had been in the Strand Cafe for some period of time during which time Mr. LaCombe came in, ate and left.

"I have attached to this affidavit a notation written by the investigator upon an envelope supplied by myself, which notation called for me to see Mr. George Bremer in Judge Barnett's Court.

"This affidavit has been dictated in my presence and I have read the same in full and all of the facts above mentioned are true and correct."

"LEONARD A. LACOMBE, being first duly sworn, on oath deposes and says: That he was one of the jurors who served as such in the above-captioned matter, the trial of which case started on May 9, 1955 and continued through May 18,

1955; that during the course of said trial the affiant, while acting as juror, was being followed and shadowed by some person whom the affiant believes and therefore alleges was a private detective; that the said affiant was concerned about said situation and that the conduct on the part of said detective was annoying and disturbing rendering said affiant apprehensive about fully exercising his duties as a juror and making the affiant concerned about his being and position as a juror; that the affiant has never served as juror prior to the term in which the above case was tried and was possibly prevented from freely exercising his judgment in passing upon the facts, issues and interpretation of the court's instructions.

"That the affiant during the course of the litigation and while he was being shadowed and followed was advised by Domingo Flores that a real party in interest who had issued a policy of insurance to Lee & Eastes, Inc., defendant above named, had procured the services of some private detective known as 'George' only to follow and to shadow your affiant and your affiant was further advised by George Milkwick that he was being shadowed by some person for and on behalf of the defendant, Lee & Eastes, Inc., and its insurance company, in connection with the performance of his duties as juror."

---

"ROBERT I. BOUNDS, being first duly sworn, on oath deposes and states: That your affiant, Robert I. Bounds, is one of the attorneys for the plaintiffs in the above-entitled cause; that subsequent to the trial of the case your affiant was advised by Richard Smith, one of the Deputy Prosecuting Attorneys of Yakima County, as follows:

"That the said Richard Smith had been advised by a person whose name he would not reveal to your affiant that said person was a private detective in the employ of the defendants; that said private detective advised Mr. Smith that he had been employed to watch, follow and keep under surveillance Leonard A. LaCombe, one of the jurors in the above-entitled case, and that he in fact had watched, followed and kept under surveillance Leonard A. LaCombe during the course of the trial."

---

"BLAINE HOPP, JR., being first duly sworn, on oath deposes and says: That he is one of the attorneys of record representing the plaintiffs in the above-captioned matter, and that he personally knows that George Bremer is the adjuster or an officer of the insurance company which had

issued a policy of liability insurance to the defendant, Lee & Eastes, Inc., defendant in the above matter. That the said George Bremer was present when the depositions of the plaintiffs were taken at the office of Tonkoff, Holst & Hopp on the 1st day of April, 1955, and that the affiant states that the said George Bremer attended every day of trial during the course of trial in the above matter and was present and in town prior to trial and was in the 'Turf', which is the recreation club situated in the Commercial Hotel, and that the said George Bremer knew that Leonard A. LaCombe was employed in said recreation club as a musician and was on the jury panel and that the said George Bremer also knew that Albert A. Schell was an employee in said hotel and was working part time. Your affiant believes and therefore alleges that the said George Bremer at all times during the trial and prior thereto worked in conjunction with and under the supervision of the attorneys for the defendants."

IN OPPOSITION TO MOTION:

"H. K. DANO, being first duly sworn, upon oath deposes and says:

"That he is one of the attorneys for the defendants in the above entitled cause. That he personally participated in the trial of the said cause. That in the course of the selection of the jury in the above entitled cause during the forenoon of May 9, 1955, the defendants had exercised their third peremptory challenge and the juror called from the panel after the exercise of the third challenge was one Leonard A. LaCombe. In the course of the examination of the said Leonard A. LaCombe by your affiant, said Leonard A. LaCombe stated that he knew the plaintiff Albert Schell fairly well and that he had seen him around the place where he, LaCombe, works. That a transcript of the examination of the jury is attached hereto, marked Exhibit A, and by reference made a part hereof.

"That the jury was thereupon sworn and trial commenced. That during the noon recess of that day, your affiant ascertained that the plaintiff Albert A. Schell, in fact, was employed at the same place where the said Leonard A. LaCombe worked. That previous investigation by your affiant had disclosed that the said Albert A. Schell had been arrested twice for third degree assault and convicted once, and on other occasions had been arrested upon bench warrants issued by the Superior Court of the State of Washington. That your affiant immediately deemed it imperative in the best interests of his client to secure someone to observe the activities of Albert A. Schell and, in particular, to ascertain

if he made any contacts or attempted contacts with the juror, Leonard A. LaCombe, during the course of the trial.

"It was recommended to your affiant that he secure the services of one Timothy N. Thompson, a private investigator in Yakima. That your affiant hoped to secure the services of said Timothy N. Thompson; however, before contacting the said Timothy N. Thompson, he ascertained that the said Timothy N. Thompson was in the employ of the plaintiffs and further ascertained that he was rendering services to them throughout the course of the trial. Your affiant thereupon secured the services of one George C. Ruselli, a private investigator from the firm of Krout and Schneider, Private Investigators, having offices in Seattle, Washington. That the said George Ruselli arrived in Yakima on May 10, 1955, and your affiant had a conference with the said George Ruselli, whereby he advised him that the said Albert A. Schell, one of the plaintiffs in the above proceedings, was employed at the same establishment as one of the jurors, Leonard A. LaCombe; that he desired to have the said George C. Ruselli keep the said Albert A. Schell under surveillance for the remainder of the case to ascertain whether or not the said Albert A. Schell carried on any sort of activities or made contacts with the juror Leonard A. LaCombe. Your affiant gave the said George C. Ruselli a physical description of the plaintiff Albert A. Schell and the juror Leonard A. LaCombe. Your affiant specifically instructed the said George C. Ruselli that in the course of his said work he was not to make any personal contact with the said Albert A. Schell or Leonard A. LaCombe or any other person in any manner connected with the trial of the case nor to carry on any conversation or to have anything whatsoever to do with any of said parties and was at all times to keep his activities unobserved.

"That George Bremer, who is referred to in the plaintiffs' affidavits, at no time engaged in any surveillance of the plaintiffs or any of the jurors and made no contacts whatsoever with any of the plaintiffs or with any of the jurors.

"That on June 8, 1955, at approximately 11:30 A.M., your affiant was called into the Strand Cafe by Cleary S. Cone, and then and there talked to Domingo M. Flores. That Domingo M. Flores stated that he had never at any time told Leonard LaCombe that a detective was following him and further stated that he had never at any time had any conversations concerning the matter with Leonard LaCombe."

"CLEARY S. CONE, being first duly sworn, upon oath deposes and says:

"That on June 8, 1955, at approximately 11:30 a.m., your affiant talked to Domingo Flores at the Strand Cafe in Yakima, Washington. That your affiant asked Domingo Flores if he had, at any time, informed Leonard LaCombe that a detective had been watching the said Leonard LaCombe; and that the said Domingo Flores stated that he had not, at any time, had any conversations with Leonard LaCombe concerning the matter. That your affiant then asked Domingo Flores if he would please sign an affidavit setting forth that he had not had any conversations with Leonard LaCombe, but, although the said Domingo Flores re-affirmed the truth of his statement, he further stated that he did not want to become further involved in the matter and that he would not sign any more papers.

"That your affiant then called H. K. Dano and then asked the said Domingo Flores, in the presence of H. K. Dano, whether he had ever had any conversations with Leonard LaCombe in which he had stated to Leonard LaCombe that a detective had been following him. The said Domingo Flores again stated that he had never, at any time, told Leonard LaCombe that a detective was following him and never had, at any time, any conversations concerning the matter with Leonard LaCombe."

"GEORGE C. RUSELLI, being first duly sworn, upon oath deposes and says:

"That I am a private investigator, employed by the firm of Krout and Schneider, private investigators.

"That on May 10, 1955, I was told by the manager of the Seattle office of Krout and Schneider to go to Yakima, Washington and contact Mr. H. K. Dano at the Cabana Motel. That your affiant contacted H. K. Dano at the Cabana Motel on the evening of May 10th and was informed by Mr. Dano that it had been discovered that one of the plaintiffs, Albert Schell, worked in the same establishment as one of the jurors, Leonard A. LaCombe, and that it was feared that the plaintiff, Albert Schell, would attempt to make improper contact with the juror, Leonard A. LaCombe. That H. K. Dano gave your affiant descriptions of Albert Schell and Leonard A. LaCombe.

"That your affiant spent several evenings thereafter at the Turf Recreation, where the said Albert Schell was employed. That the Turf Recreation is a public place, consisting of a restaurant, bar and dance area. That while

at the Turf Recreation your affiant was in the company of other persons and mingled with the crowd and took part in the ordinary activities of the persons who frequented the establishment. That while in said establishment, your affiant observed Albert Schell and did on occasion see Leonard LaCombe. That on many occasions, your affiant followed the said Albert Schell and maintained surveillance of the place of residence of Albert Schell.

"That your affiant did not follow, shadow, annoy or disturb the said Leonard LaCombe nor in any way interfere with the said Leonard LaCombe. That your affiant made no attempt to keep the said Leonard LaCombe under surveillance.

"That on one occasion your affiant and a companion went to the Strand Cafe for food and observed Leonard LaCombe eating there. That Leonard LaCombe left before your affiant and his companion. That your affiant did not know or suspect that Leonard LaCombe was in the Strand Cafe when your affiant went there. That, while in Yakima, your affiant ate almost all his meals at the Strand Cafe. That your affiant did not follow the said Leonard LaCombe either to or from the said Strand Cafe.

"That your affiant has read the affidavit of Domingo M. Flores. That your affiant did not tell Domingo Flores that he was interested in the activities of Leonard A. LaCombe, also known as Duke LaCombe, who was then serving as a juror. That he did not tell the said Domingo M. Flores that he had shadowed the said Duke LaCombe on a previous night and that he had never let Duke LaCombe's automobile out of sight and had trailed Duke LaCombe to the Strand Cafe on the evening in question at which time a party was being held at the Strand Cafe and attended by Duke LaCombe.

"That your affiant had not followed Duke LaCombe to the cafe. That your affiant had learned of the party by observing a placard on the door of the Congo Room at the Strand Cafe which stated in substance, 'This room reserved for Duke LaCombe and party.' That your affiant observed the placard the day after the party and had no knowledge of said party previous to that time. That your affiant inquired at the Strand Cafe and learned that the said party had been held after hours. That your affiant described Albert Schell and inquired whether or not Albert Schell had attended the party. That your affiant was interested only in whether or not the said Albert Schell had attended the party given by the said Leonard LaCombe. That your

affiant stated to the said Domingo M. Flores that he was interested in ascertaining whether or not the said Albert Schell had attended the party. Your affiant obtained a description of a man resembling Albert Schell and dressed like Albert Schell and learned that such a man had attended the party. That your affiant did request that the said Domingo M. Flores go to Department No. 2 of the Superior Court at the Courthouse at Yakima to determine whether or not the man in question was, in fact, Albert Schell."

"RICHARD C. SMITH, being first duly sworn, on oath deposes and says:

"That during the trial of the above-entitled action he was approached by a man who identified himself as George Ruselli. That the said George Ruselli stated he was retained by Lee & Eastes, Inc., that he was watching Albert Schell, Bonnie Coats, and Leonard LaCombe. That he had seen Albert Schell and Leonard LaCombe together at the Turf Recreation. That your affiant does not recall any further conversation with George Ruselli concerning this investigation."

The trial court, in its memorandum opinion, summarized the contents of each affidavit and then said:

"From the above, the court finds that neither the defendants nor their attorneys retained or instructed anyone to follow, shadow or contact the juror, Leonard LaCombe. The court finds that the investigator was instructed to follow and shadow one of the plaintiffs, Albert A. Schell. The court finds that during the course of the shadowing of Schell, LaCombe was observed in public places, but this observation was merely incidental to the surveillance of Schell.

"It is the plaintiffs' contention that although the evidence does not show that the juror in question was approached or contacted, the causing of the juror to be shadowed is such misconduct as to warrant a new trial. *Solomon* v. *Loud*, 140 N. W. 651, is one of the cases cited to sustain this contention. That case, however, is not apposite. It was held therein that the action of defendant and his counsel in hiring and paying a juror who was not serving in the particular case to watch the jury and see that plaintiff and his counsel did not tamper with the jurors was misconduct, which would inevitably bring the court into disrepute, and cause the integrity of its proceedings to be suspected, and which justified a new trial on plaintiff's motion. The court therein said:

" 'But when misconduct, calculated, if not intended, to have a generally pernicious effect upon legal proceedings, is traceable to the prevailing party in such proceedings, we are of the opinion that reason appears for treating the trial as a mistrial and for setting aside the judgment.'

"In the above case, a contract was entered into with one of the jury panel to watch the jury. In the instant case, however, the court has found not only that the defendants did not employ the detective to follow or shadow the juror, but also that the detective did not, in fact, follow or shadow the juror. The court has found that he observed the juror in a public place at the same time that he observed the plaintiff Schell, whom he was in truth and in fact shadowing."

■ Tampering with a jury will not be tolerated. See *Remmer v. United States,* 350 U. S. 377, 100 L. Ed. 435, 76 S. Ct. 425. It was held in *Sinclair v. United States,* 279 U. S. 749, 73 L. Ed. 938, 49 S. Ct. 471, 63 A. L. R. 1258, that the employment of detectives by the defendants in a criminal case to shadow the jurors amounted to a contempt of court, even though none of the persons engaged in such shadowing approached or communicated with a juror or attempted to do so, and though no juror may have been conscious of being under observation. The court said:

"That the acts here disclosed, and for which three of the appellants were certainly responsible, tended to obstruct the honest and fair administration of justice we cannot doubt. The jury is an essential instrumentality—an appendage—of the court, the body ordained to pass upon guilt or innocence. Exercise of calm and informed judgment by its members is essential to proper enforcement of law. The most exemplary resent having their footsteps dogged by private detectives. . . . The mere suspicion that he, his family, and friends are being subjected to surveillance by such persons is enough to destroy the equilibrium of the average juror and render impossible the exercise of calm judgment upon patient consideration. If those fit for juries understand that they may be freely subjected to treatment like that here disclosed, they will either shun the burdens of the service or perform it with disquiet and disgust. Trial by capable juries, in important cases, probably would become an impossibility. The mistrial of November 2nd indicates what would often happen. We can discover no reason for emasculating the power of courts to protect themselves against

this odious thing. See *United States v. Shipp*, 203 U. S. 563, 575, 51 L. Ed. 319, 324, 27 Sup. Ct. Rep. 165, 8 Ann. Cas. 265."

Jurors are an integral part of our judicial system. They are the sole judges of the facts. They are entitled to the same confidence and respect as that given to a judge. They should be permitted to perform their functions unhampered, and without any outside interference whatsoever. If, during the trial, it should come to the attention of the judge that anything has occurred which might tend to interfere with the calm and fair judgment of any particular juror, it would be his duty to declare a mistrial. If, after trial, it should come to his attention that such had occurred, it would be his duty to order a new trial.

Appellants contend that, this matter coming before us entirely upon affidavits, rather than upon oral testimony, we are in just as good a position to weigh them as the trial court. Appellants call our attention to a number of labor and industries cases where this rule has been applied. Generally speaking, a motion for new trial is addressed to the sound discretion of the court, and the court may exercise considerable discretion in granting or denying the motion. 66 C. J. S. 484, New Trial, § 201. This court will not intervene unless there has been a manifest abuse of discretion by the trial court. *Skov v. MacKenzie-Richardson Inc.*, 48 Wn. (2d) 710, 296 P. (2d) 521. In *Taylor v. Kitsap County Transp. Co.*, 158 Wash. 404, 290 Pac. 996, we said:

"The trial court was in much better position to pass upon the weight to be given to the affidavits than are we, and, since that court declined to grant a new trial on the ground of misconduct of the jury, we cannot say that there was error in this respect."

Another judge, upon examination of these conflicting affidavits, might, in exercising his discretion, have granted a new trial. Our problem is to determine whether or not this particular judge abused his discretion in ruling on the motion.

Mr. Bounds, Mr. Hopp, Mr. Cone, and Mr. Dano are all attorneys who had practiced before the trial judge.

He evidently knew, either personally or by reputation, all of those presenting affidavits, with the exception of the investigator, Mr. Ruselli. During the trial he had had occasion to observe the juror LaCombe. He was much better qualified than are we to analyze and give proper weight to each affidavit. He found that Ruselli's observation of juror LaCombe was merely incidental to the surveillance of plaintiff Schell. We are confident that the able, experienced, and conscientious trial judge, who has presided over that court since 1929, would not have hesitated to order a new trial if he believed that anything had occurred which might have tended, in any manner, to interfere, influence, or disturb LaCombe in the untrammeled exercise of his judgment as a juror. There was no abuse of discretion in denying the motion for new trial.

The judgment is affirmed.

The foregoing opinion had been prepared by Judge E. W. Schwellenbach before his death. The undersigned, a majority of the court, have adopted it as the opinion of the court and, for the reasons therein assigned, affirm the judgment of the trial court.

HILL, C. J., MALLERY, DONWORTH, FINLEY, WEAVER, and OTT, JJ.

FOSTER, J., did not participate.

ROSELLINI, J. (dissenting)—The affidavits upon which the motion for new trial was presented were in conflict as to the amount of surveillance or shadowing of the juror which occurred. The trial court found it negligible because the primary purpose of the detective was to observe the plaintiff's actions. But in my opinion, the courts should never give their sanction to even the slightest degree of such tampering, which is contrary to our basic concept of a jury composed of men as free as possible from prejudice and protected from improper influence of the parties. For this reason, even though no harm came to the plaintiffs as a result of the incidental surveillance which occurred in this case, I think the stamp of severe judicial disapproval should be placed upon it and a new trial granted.