[No. 6693-2-III.   Division Three.   December 16, 1986.]

LIBRADO VASQUEZ, ET AL, *Appellants,* v. KARL E.
MARKIN, ET AL, *Respondents.*

*Warren L. Dewar, Lonny R. Suko, James E. Baker,* and *Lyon, Beaulaurier, Weigand, Suko & Gustafson,* for appellants.

*Dan W. Keefe, Esther Larsen Holden,* and *McGillivary & Jones, P.S.; David A. Thorner* and *Thorner, Almon, Kennedy & Gano, P.S.,* for respondents.

THOMPSON, J.—Librado and Enriqueta C. Vasquez appeal a jury verdict in favor of Dr. Karl E. Markin in an action for medical negligence. We affirm; thus, we need not address Dr. Markin's cross appeal.

Dr. Markin, a gynecologist, referred Mrs. Vasquez to a neurologist in February 1981 in response to her complaint of numbness and pain in her right arm, chest and neck. The neurologist informed Dr. Markin there was no objective finding of disease.

On December 21, 1981, Mrs. Vasquez, then 43 years old, consulted Dr. Markin for heavy vaginal bleeding and numbness of her right arm. At that time Dr. Markin performed a pelvic exam and removed an intrauterine device; he also noted Mrs. Vasquez had limited neck mobility. Because Mrs. Vasquez wanted to be sterilized, a laparoscopy and tubal ligation, along with a dilation and curettage, were scheduled for January 15, 1982. Mrs. Vasquez' consent to the procedures was obtained.

In preparation for the surgery, Mrs. Vasquez was given a blood test on January 11, 1982; results indicated the oxygen carrying capacity of her blood was below normal. Dr. Cyn-

thia Sandlin, the anesthesiologist, and Dr. Markin discussed the blood test results and determined to proceed with surgery using general anesthesia. Dr. Sandlin interviewed Mrs. Vasquez the morning of surgery and obtained her consent.

Dr. Sandlin administered the first dose of anesthesia to Mrs. Vasquez in the operating room at 7:50 a.m. When Dr. Sandlin's attempt to place an endotracheal tube in Mrs. Vasquez' throat (intubation) failed, a second dose of anesthesia was administered. A second intubation also failed. Dr. Sandlin then made two unsuccessful attempts at nasal intubation. At that point surgery was canceled. Dr. James Muhm, an internist, arrived at 8:45 a.m. in response to an emergency code call.

At 9:45 a.m. Mrs. Vasquez was transferred to the intensive care unit (ICU) with Dr. Muhm in charge. Drs. Sandlin and Markin accompanied Mrs. Vasquez to ICU; however, Dr. Markin left and started another surgery at 10:30 a.m. At 10:40 a.m. Dr. Markin was contacted in the operating room and told "Mrs. Vasquez is going to need a tracheostomy. How would you like to have this handled?" His response was: "Would you ask one of the general surgeons to attend."

At 11 a.m. Dr. Steven Elerding, a general surgeon, received a call to proceed to Valley Memorial Hospital; he performed a tracheostomy at 11:30 a.m. By then Mrs. Vasquez' brain had been deprived of oxygen for a period of time. Mrs. Vasquez suffered permanent brain damage which drastically reduced her IQ, left her partially paralyzed, blind, and with severe speech problems. Prior to trial the court determined a settlement between Mr. and Mrs. Vasquez and defendants Dr. Muhm, Dr. Sandlin, and the Valley Memorial Hospital, was reasonable. Following trial, the jury returned a verdict in favor of Dr. Markin.

The first issue is whether the court erred in refusing to grant a new trial based on unauthorized bailiff/juror communication regarding the prior settlement with Drs. Sandlin and Muhm and Valley Memorial Hospital.

Apparently, the court administrator placed the following sign on the jury room door: "This is the Jury Room for the jurors in the [*sic*] *Vasquez vs. Sandlin*". A list of the jurors, headed by the caption "*Vasquez vs. Sandlin*", was posted inside the jury room. Following trial, two jurors stated in affidavits that when questioned as to the identity of Sandlin and the omission of Markin from the case name, the bailiff stated Sandlin and others had originally been parties but had settled. The bailiff, on the other hand, attested that when asked about the title of the case he had stated "the case had originally been given a name and number by the court clerk and . . . this case name remained, until the case was finally resolved". He denied informing any juror of a settlement. The trial court refused to grant a new trial, finding the bailiff did not mention the settlement to the jury.

It is well settled that a motion for a new trial is directed to the sound discretion of the trial court. *Davis v. Globe Mach. Mfg. Co.*, 102 Wn.2d 68, 77, 684 P.2d 692 (1984); *Coats v. Lee & Eastes, Inc.*, 51 Wn.2d 542, 552, 320 P.2d 292 (1958); *Byerly v. Madsen*, 41 Wn. App. 495, 499, 704 P.2d 1236 (1985). The trial court may exercise considerable discretion in granting or denying the motion, and the reviewing court will not intervene unless there has been a manifest abuse of that discretion. *Coats*, at 552. The test for an abuse of discretion is whether no reasonable judge would have reached the same conclusion. *In re Marriage of Landry*, 103 Wn.2d 807, 809–10, 699 P.2d 214 (1985); *Byerly*, at 499.

As in *Coats*, the matter comes before this court entirely upon affidavits. *Coats*, relying on *Taylor v. Kitsap Cy. Transp. Co.*, 158 Wash. 404, 411, 290 P. 996 (1930), stated at page 552:

> "The trial court was in much better position to pass upon the weight to be given to the affidavits than are we, and, since that court declined to grant a new trial on the ground of misconduct of the jury, we cannot say that there was error in this respect."

Another judge, upon examination of these conflicting affidavits, might, in exercising his discretion, have granted a new trial. Our problem is to determine whether or not this particular judge abused his discretion in ruling on the motion.

Here, the trial judge in refusing to grant a new trial found that the bailiff did not state the other party had settled. Also, the communication happened early in the trial and not during jury deliberation. In addition, he believed the jury had other grounds to wonder why Dr. Sandlin was out of the case, based on defense strategy at trial.

The court further noted the instruction on proximate cause instructed the jury not to consider whether other parties were involved in the lawsuit or had settled if they found Dr. Markin negligent and his negligence was a proximate cause of Mrs. Vasquez' injury. Finally, the court determined in view of the testimony and instructions there was no "possibility of prejudice". Here, the judge, having presided over the trial, was in the best position to analyze and give proper weight to each affidavit. *Coats,* at 553. His finding that the bailiff did not inform the jury of a settlement will not be disturbed by this court. *Golden Gate Hop Ranch, Inc. v. Velsicol Chem. Corp.,* 66 Wn.2d 469, 472, 403 P.2d 351 (1965), *cert. denied,* 382 U.S. 1025 (1966).

However, there remains the issue of whether the jurors' affidavits allege sufficient juror misconduct to justify a new trial. Juror Elder attested: "There was some discussion by the jurors about others who may have been in the lawsuit. This discussion occurred shortly after the Bailiff's statement to us." On the other hand, Juror Haines attested the discussion occurred during deliberations.

■ Evidence of settlements is inadmissible, *Grigsby v. Seattle,* 12 Wn. App. 453, 529 P.2d 1167, *review denied,* 85 Wn.2d 1012 (1975); and juror statements regarding settlements may warrant a new trial, *Byerly,* at 500–01. In *Byerly* a new trial was granted because, both before and during deliberations, one of the jurors stated in the presence of other jurors that a former party to the action had

settled for $100,000. However, mere speculation the jury considered or was influenced by references to settlement does not justify a new trial. *Vern J. Oja & Assocs. v. Washington Park Towers, Inc.,* 15 Wn. App. 356, 361–63, 549 P.2d 63 (1976), *aff'd,* 89 Wn.2d 72, 569 P.2d 1141 (1977). "[T]he trial court, in ruling on a motion for a new trial based on jury misconduct, may consider jurors' affidavits insofar as they state 'the facts showing misconduct, but not as showing the *effect* of such misconduct on the verdict'." *Byerly,* at 499 (quoting *Gardner v. Malone,* 60 Wn.2d 836, 842, 376 P.2d 651, 379 P.2d 918 (1962)); *Taylor,* at 410.

When any misconduct on the bailiff's part is discounted, it appears the jury merely speculated about possible settlements, which would not warrant a new trial. *Vern J. Oja,* at 361–63. We hold the trial court did not abuse its discretion in denying the motion for a new trial.

■ The next issue is whether the court erred in instructing the jury. Mr. and Mrs. Vasquez have assigned error to many of the instructions the court gave and two of their proposed instructions the court did not give. Generally, individual instructions may not be singled out for consideration without reference to the entire set of instructions which were given. *Nelson v. Mueller,* 85 Wn.2d 234, 238, 533 P.2d 383 (1975). The jury is properly instructed if each party is permitted to argue its theory of the case. *Nelson,* at 238–39; *Washington Natural Gas Co. v. Sea–Con Corp.,* 34 Wn. App. 879, 880, 665 P.2d 405 (1983).

Objection has been raised to instruction 12 as being unsupported by the evidence: The instruction was taken verbatim from RCW 7.70.060, the informed consent statute.[1]

---

[1]Instruction 12:

"The Washington statute provides:

"'If a patient while legally competent . . . signs a consent form which sets forth the following, the signed consent form shall constitute prima facie evidence that the patient gave his informed consent to the treatment administered and the patient has the burden of rebutting this by a preponderance of the evidence:

Mr. and Mrs. Vasquez claim it was improper to give this instruction because both Dr. Markin and Dr. Sandlin testified they did not inform Mrs. Vasquez of the results of her lab tests. However, there was testimony that Mrs. Vasquez signed two consent forms, one on January 5, 1982 in Dr. Markin's office and one the morning of surgery. Moreover, the consent form was admitted into evidence. In his oral decision, the trial judge explained he believed the admitted form was deficient and he wanted the jury to know what it should have contained. Also, there was considerable dispute whether the blood test results were material to Mrs. Vasquez' informed consent.

Generally, an instruction is proper when there is sufficient evidence in the record to support it. *State v. Allery*, 101 Wn.2d 591, 598, 682 P.2d 312 (1984). The doctrine of informed consent mandates that a physician inform the patient of possible risks before obtaining the patient's consent to treatment. *Adams v. Richland Clinic, Inc., P.S.*, 37 Wn. App. 650, 656, 681 P.2d 1305 (1984). However, the doctrine requires information only of material risks. *Adams*, at 656.

Although Mr. and Mrs. Vasquez contend the effect of written words are questions of law for the court, whether the probability a type of harm is a risk which a reasonable patient would consider material in deciding to undergo treatment is a question for the jury. *Adams*, at 658; *Brown v. Dahl*, 41 Wn. App. 565, 576, 705 P.2d 781 (1985). Consequently, reading the instructions as a whole, this instruction was proper. *See Brown*, at 569 (because plaintiffs signed a consent to anesthesia form, they have the burden

---

"(1) A description, in language the patient could reasonably be expected to understand, of:

"(a) The nature and character of the proposed treatment;

"(b) The anticipated results of the proposed treatment;

"(c) The recognized possible alternative forms of treatment; and

"(d) The recognized serious possible risks, complications, and anticipated benefits involved in the treatment and in the recognized possible alternative forms of treatment, including nontreatment.'"

of rebutting the presumption of having given their informed consent); *see also* Comment, WPI 105.05.

■ Mr. and Mrs. Vasquez claim the court erred in refusing to grant a directed verdict on the informed consent issue. "A motion for a directed verdict may be granted only if it can be said, as a matter of law, that no evidence or reasonable inferences existed to sustain a verdict for the party opposing the motion." *Bertsch v. Brewer,* 97 Wn.2d 83, 90, 640 P.2d 711 (1982). Moreover, the evidence must be considered in the light most favorable to the nonmovant. *Bertsch,* at 90. Here the materiality of Mrs. Vasquez' blood test results was disputed at trial; the court properly refused to direct a verdict on this issue. *Bertsch,* at 91; *Adams,* at 660.

Exception was also taken to the giving of the following instructions:

INSTRUCTION No. 14

You are instructed that a physician employed to treat or administer to a patient does not and cannot insure or in any sense guarantee a satisfactory result, nor is the physician responsible for unsatisfactory results of his treatment or care unless his own lack of professional knowledge and skill or his negligent failure to exercise it is the proximate cause of such result. The fact in a particular case that complications result is not in itself any evidence that the treatment was improper or that the physician failed to exercise the professional knowledge and skill necessary to proper professional practice, nor is it any evidence that the doctor failed to exercise his skill with reasonable care.

INSTRUCTION No. 15

A physician is not liable for an honest error of judgment if, in arriving at that judgment, the physician exercised reasonable care and skill within the standard of care for a reasonably prudent practitioner in the state of Washington.

INSTRUCTION No. 16

A physician or surgeon is not to be judged in the light of any after acquired knowledge in relation to the case, and the question of whether or not he exercised reasonable care and skill as defined in these instructions is to

be determined by reference to what is known in relation to the case at the time of treatment or examination, and must be determined by reference to the pertinent facts then in existence of which he knew, or in the exercise of ordinary care should have known.

Mr. and Mrs. Vasquez claim all three instructions conflict with the standard of care enunciated in *Harris v. Groth,* 99 Wn.2d 438, 663 P.2d 113 (1983). Instructions 14 and 15, the "no guaranty", "bad result", and "error in judgment" instructions, were found to be improper in *Watson v. Hockett,* 42 Wn. App. 549, 712 P.2d 855 (1986). As to the "no guaranty" and "bad result" instruction, there it was held no facts supported it and the trial court had properly refused to submit it to the jury. As to the "error in judgment" instruction (instruction 15 here), in light of *Harris v. Groth, supra,* and its definition of the physician's standard of care, the instruction was held to be an improper statement of the law. However, very recently *Watson v. Hockett,* 107 Wn.2d 158, 169, 727 P.2d 669 (1986) reversed the Court of Appeals with respect to the instruction issues.

In *Watson,* the Supreme Court held these instructions were proper, but hereafter, to avoid being slanted and argumentative, the instruction should simply state:

A doctor does not guarantee a good medical result.
A poor medical result is not, in itself, evidence of any wrongdoing by the doctor.

*Watson,* 107 Wn.2d at 163-64.

The "error of judgment" instruction henceforth should not contain the word "honest", for the same reason that it imparts an argumentative aspect not consonant with current jury instruction practice.

In addition, the "error of judgment" instruction applies only where there is evidence that in arriving at a judgment "'the physician or surgeon exercised reasonable care and skill, within the standard of care he [or she] was obliged to follow.'" *Watson,* 107 Wn.2d at 165. It will normally be limited to situations where the defendant doctor is confronted with a choice among competing therapeutic tech-

niques or among medical diagnoses and is to be given with caution. *Watson,* 107 Wn.2d at 165.

Finally, these instructions can only be given in connection with a proper standard of care instruction because they supplement that instruction. *Watson,* 107 Wn.2d at 166; *Miller v. Kennedy,* 91 Wn.2d 155, 159, 588 P.2d 734 (1978).

Here, Dr. Markin presented evidence of reasonable care, and was confronted with the situation where he had to make a choice. Finally, a proper standard of care instruction was given.[2] Thus, it was not error to give instructions 14 and 15.

Instruction 16 on after acquired knowledge was also properly given. In Washington negligence is not a matter to be judged after the occurrence; thus, "'[f]oresight, not retrospect, is the standard of diligence." *Winsor v. Smart's Auto Freight Co.,* 25 Wn.2d 383, 387, 171 P.2d 251 (1946) (quoting *Peterson v. Betts,* 24 Wn.2d 376, 388, 165 P.2d 95 (1946)). *Accord, Meeks v. Marx,* 15 Wn. App. 571, 579, 550 P.2d 1158 (1976).

Finally, Mr. and Mrs. Vasquez contend the trial court overemphasized the limitations on a physician's liability by giving multiple standard of care instructions, instructions 14, 15, and 16. Generally, the number of instructions given is within the discretion of the trial court. *Peacock v. Piper,* 81 Wn.2d 731, 739, 504 P.2d 1124 (1973). Here, the court gave 21 instructions, and reading them as a whole, it does not appear the court abused its discretion.

The Vasquezes further assign error to the refusal to give proposed instruction 9:

You are instructed that when a physician undertakes to treat a patient, it is his duty to continue to devote his

---

[2]Instruction 8:

"A physician who holds himself out as a specialist owes to the patient a duty to comply with the standard of care for that specialty prevailing at the time of the care or treatment in question. This means that the physician must possess and exercise the degree of skill, care and learning of a reasonably prudent physician in the same specialty in the State of Washington acting in the same or similar circumstances. Failure to exercise such skill, care and learning is negligence."

best attention *to* the case until his medical services are no longer needed.

Dr. Markin initially objected to the language "his best attention to the" case as establishing "an optimal standard" above that set in *Harris* or RCW 7.70. Mr. and Mrs. Vasquez then proposed to substitute this language: "continue to devote his reasonably prudent care". After further suggestions by both sides, the court determined to take it out altogether because Mr. and Mrs. Vasquez could argue their theory of abandonment under instruction 5.[3]

Generally, the reviewing court considers an objection to the exclusion of a specific instruction by examining the instructions as a whole. If a party has been permitted to argue his theory of the case, no prejudice results. *Nelson v. Mueller,* 85 Wn.2d 234, 238, 533 P.2d 383 (1975). Here, the record, including oral argument by Mr. and Mrs. Vasquez, discloses that the abandonment issue was adequately presented to the jury. Therefore, the court did not err in refusing this instruction.

Mr. and Mrs. Vasquez also assign error to the court's failure to submit the following instruction to the jury:

If you find that Dr. Markin was negligent and that his negligence was a proximate cause of Plaintiffs' injuries and damages, then it is not a defense that Dr. Sandlin may also have been negligent. Under such circumstances, Plaintiffs are entitled to obtain full recovery from Dr. Markin.

However, the court did give a proximate cause instruction[4]

---

[3] A portion of instruction 5 reads:

"The plaintiffs claim that the defendant was negligent in one or more of the following respects:

". . .

"7. In abandoning the care of Mrs. Vasquez after Dr. Muhm's arrival at approximately 8:45 a.m., and after she was transferred to the Intensive Care Unit from the Operating Room;"

[4] Instruction 7:

"The term 'proximate cause' means a cause which in a direct sequence, unbroken by any new independent cause, produces the injuries complained of and without which such injuries would not have happened.

which incorporated this instruction and allowed Mr. and Mrs. Vasquez to present their theory. *Nelson,* at 238. Therefore, the court did not err.

The next issue is whether the court erred in excluding certain expert testimony. The admission or exclusion of expert testimony is discretionary with the trial court. *Maehren v. Seattle,* 92 Wn.2d 480, 488, 599 P.2d 1255 (1979), *cert. denied,* 452 U.S. 938 (1981). First, Mr. and Mrs. Vasquez attack the exclusion of certain depositions of experts.

At a pretrial hearing, the parties agreed to list their experts by a certain date. Mr. and Mrs. Vasquez did not list Dr. Barany although he had been previously deposed. The court issued an order on February 10, 1984, that no additional witnesses on liability could be called by any party. The court subsequently denied Mr. and Mrs. Vasquez' May 3, 1984 request to add additional experts, including Dr. Barany.

CR 16 provides in part:

> (a) . . . By order, or on the motion of any party, the court may in its discretion direct the attorneys for the parties to appear before it for a conference to consider:
>
> . . .
>
> (4) The limitation of the number of expert witnesses;

Moreover, CR 16(b) states that if the court incorporates the action taken at the pretrial hearing into an order, "such order when entered controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice". Here, the pretrial order required the parties to determine which witnesses they intended to call at trial by February 10, 1984. Since the proposed testimony raised no new issue, but was merely cumulative, the trial court did

"There may be more than one proximate cause of the same injury. If you find that the defendant was negligent and that such negligence was a proximate cause of injury or damage to the plaintiffs, it is not a defense that some other cause may also have been a proximate cause.

"However, if you find that the sole proximate cause of injury or damage to the plaintiffs was some other cause, then your verdict should be for the defendant."

not abuse its discretion in enforcing its earlier order. *Accord, Lampard v. Roth,* 38 Wn. App. 198, 684 P.2d 1353 (1984); *Yukon Equip., Inc. v. Gordon,* 660 P.2d 428 (Alaska 1983).

Mr. and Mrs. Vasquez, citing *Pimentel v. Roundup Co.,* 100 Wn.2d 39, 666 P.2d 888 (1983), claim the depositions of these witnesses are admissible under CR 32(a)(3). However, *Pimentel* is readily distinguishable because in that case the defendant stipulated to the use of the deposition for *all purposes allowed by the civil rules. Pimentel,* at 51. Thus, the expert's deposition was removed from the confines of CR 26(b)(4)(B).[5] *See Mothershead v. Adams,* 32 Wn. App. 325, 329, 647 P.2d 525 (1982) (a party may waive its right to shield its expert by allowing a deposition to be taken *and* stipulating for its use, or by listing an expert as a witness to be called at trial). Moreover, there is no showing of "exceptional circumstances" under CR 26(b)(4)(B) or "manifest injustice" under CR 16(b), for failure to list the expert witnesses, which would warrant overturning the court's pretrial order. The trial judge properly exercised his discretion. *State v. Washington Horse Breeders Ass'n,* 64 Wn.2d 756, 394 P.2d 218 (1964); *Crenna v. Ford Motor Co.,* 12 Wn. App. 824, 832 n.3, 532 P.2d 290, *review denied,* 85 Wn.2d 1011 (1975).

■ Next, the Vasquezes challenge the exclusion of rebuttal testimony. The controversy here is whether the court erred in refusing to allow Mr. and Mrs. Vasquez to

---

[5]CR 26(b)(4)(B) provides:

"A party may discover facts known or opinions held by an expert who is not expected to be called as a witness at trial, only as provided in rule 35(b) [which concerns the exchange of reports of examining physicians] or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means."

"Rule 26(b)(4), taken as a whole, has been recognized to have been promulgated for the dual purpose of (1) facilitating the presentation and clarification of issues at trial, while (2) guarding against the danger that one party will unfairly use another party's experts to prepare his own case." Annot., *Pretrial Discovery of Facts Known and Opinions Held by Opponent's Experts Under Rule 26(b)(4) of Federal Rules of Civil Procedure,* 33 A.L.R. Fed. 403, 414 (1977).

rebut defense expert testimony that the normal range of hemoglobin was 5 rather than .5 as the Vasquezes' expert had testified.

> Rebuttal evidence is admitted to enable the plaintiff to answer new matter presented by the defense. Genuine rebuttal evidence is not simply a reiteration of evidence in chief but consists of evidence offered in reply to new matters.

(Citation omitted.) *Kremer v. Audette,* 35 Wn. App. 643, 647–48, 668 P.2d 1315 (1983) (quoting *State v. White,* 74 Wn.2d 386, 394–95, 444 P.2d 661 (1968)). Since the proposed rebuttal evidence was merely a repeat of earlier testimony in Mr. and Mrs. Vasquez' case in chief, the court did not abuse its discretion in refusing this evidence. *Kremer,* at 648.

Affirmed.

McINTURFF, A.C.J., and MUNSON, J., concur.

Reconsideration denied January 29, 1987.

Review denied by Supreme Court June 4, 1987.