# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| JOYCE E. SHOEMAKE, | ) | No. 72716-8-I |
|  | ) |  |
| Appellant, | ) | DIVISION ONE |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| ELI LILLY & COMPANY, | ) | UNPUBLISHED |
|  | ) |  |
| Respondent. | ) | FILED: June 13, 2016 |
|  | ) |  |

Cox, J. — Joyce Shoemake appeals a judgment based on an adverse jury verdict in this workers' compensation case. Because the trial court properly exercised its discretion for all matters that are properly before us, we affirm.

Shoemake worked for Eli Lilly & Company, formerly known as Physio Control. During her employment, Eli Lilly remodeled the building where she worked. Shoemake began experiencing symptoms including numbness, headaches, fatigue, dizziness, and difficulty concentrating. She claims that fumes and strong odors coming from the remodel injured her.

In 1991, Shoemake filed a claim with the Department of Labor and Industries, seeking compensation for her alleged exposure to toxic chemicals. The Department eventually denied her claim on the basis that she suffered no occupational disease. The Board of Industrial Insurance Appeals (BIIA) affirmed.

Shoemake appealed to superior court. A jury determined that the BIIA's decision was correct. The superior court entered a judgment based on this verdict.

Shoemake appeals.

## EVIDENTIARY RULINGS

Shoemake argues that the court made several evidentiary errors. We disagree.

Correct interpretation of an evidentiary rule is a question of law that we review de novo.[1] "Once the rule is correctly interpreted, the trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion."[2]

"A trial court abuses its discretion if a decision is manifestly unreasonable or based on untenable grounds or untenable reasons."[3]

### Cumulative Evidence

Shoemake argues that the court abused its discretion by allowing cumulative expert testimony. We hold that Dr. Darby's expert testimony was not cumulative.

Under ER 403, the court may exclude relevant evidence if its probative value is substantially outweighed by "considerations of undue delay, waste of

---

[1] State v. DeVincentis, 150 Wn.2d 11, 17, 74 P.3d 119 (2003).

[2] Id.

[3] Skagit County Pub. Hosp. Dist. No. 304 v. Skagit County Pub. Hosp. Dist. No. 1, 177 Wn.2d 718, 730, 305 P.3d 1079 (2013).

time, or needless presentation of cumulative evidence." Trial courts have discretion when making balancing decisions under this rule.[4]

Similarly, under CR 16(a)(4), the trial court may limit the number of expert witnesses. Under this rule, the trial court does not abuse its discretion if it excludes cumulative expert testimony.[5]

Here, Eli Lilly had several expert witnesses. Shoemake argued that the testimony of one of these witnesses, Dr. Darby, was cumulative. Specifically, she argued that because Dr. Darby shared his specialty with another one of Eli Lilly's experts, and Dr. Darby had merely reviewed Shoemake's medical records to give his opinion, his testimony was cumulative.

The trial court ruled that the evidence was not cumulative because Dr. Darby was the only doctor who specialized in environmental medicine. The court also determined that to the extent some testimony was cumulative, this did not substantially outweigh its probative value.

The trial court exercised its discretion on tenable grounds. Shoemake does not dispute that Dr. Darby testified to a subspecialty that was unique to Eli Lilly's expert witnesses. And the trial court has discretion when balancing probative value and cumulative effect. Thus, the trial court properly exercised its discretion to allow Dr. Darby to testify.

---

[4] State v. Barry, 184 Wn. App. 790, 801, 339 P.3d 200 (2014).

[5] Vasquez v. Markin, 46 Wn. App. 480, 491-92, 731 P.2d 510 (1986).

*Exclusion of Proposed Exhibits*

Shoemake also argues that the trial court improperly excluded certain exhibits that she offered into evidence. We disagree.

Shoemake offered several "material safety data sheets" (MSDSs). These sheets list materials used by contractors, and any hazardous ingredients in the materials. Both the administrative law judge of the BIIA and the superior court excluded these exhibits.

Shoemake argues that the exhibits are admissible either as business records or as hearsay upon which her expert witnesses relied. She is incorrect.

Under RCW 5.45.020, the court may admit business records as evidence. Business records under this rule require an adequate foundation—a "custodian or other qualified witness" must testify to the record's "identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event."[6]

Under ER 703, expert witness may offer opinions based on inadmissible evidence if it is "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." The trial court may admit hearsay evidence to show the basis of the expert's testimony.[7] But admission of

---

[6] RCW 5.45.020.

[7] Allen v. Asbestos Corp., Ltd., 138 Wn. App. 564, 579, 157 P.3d 406 (2007).

such evidence is only for the limited purpose of explaining the basis for the opinion—it is not proof that those facts occurred.[8]

Here, Shoemake failed in her burden to establish an adequate foundation for the exhibits to be admitted as business records. Significantly, no custodian of these records testified to lay a foundation for their admission.

Shoemake's counsel attempted to introduce the records through Shoemake's testimony. She testified that she received these records after requesting them from Eli Lilly, which in turn requested them from the contractors. But she did not and could not testify to how or when these records were prepared, or whether they were made in the regular course of business. Accordingly, the superior court properly determined that the MSDSs did not qualify as business records under RCW 5.45.020.

The court also did not abuse its discretion when it declined to admit the MSDSs as the basis of expert opinions. Doing so would have been error.

Here, the court determined that Shoemake's experts could testify about the MSDSs to the extent that experts in their field used such information. That was a correct determination.

But the court declined to admit the MSDSs themselves as exhibits. The court noted that it was unnecessary for the jury to see these documents. It stated:

> I guess I'm wondering how meaningful the MSDSs
> themselves would be to the jury. Because, presumably, I—they,
> you know, they're fairly technical in nature. And I'm not sure that
> just looking at that means much of anything to the jury. It would

---

[8] Id.

presumably mean much more to somebody that's an expert in the area.[9]

This was a correct exercise of discretion. The expert testimony on the MSDSs sufficiently informed the jury about the basis of the expert's opinions.

Shoemake also failed to articulate why admitting the MSDSs themselves was necessary. In response to the court's quoted statement, Shoemake stated:

> And I respect what you're saying, Your Honor, and I agree with you in the sense that it's not just a—it's not the document, per se, but it's what's contained on the document which can be used by the expert. And we tried to bring that in through testimony through Dr. Firestone, through Dr. Amman, that—and I believe as well as Dr. Buscher. That if we have these documents or these materials, how would that pertain to this situation, and how would it pertain to exposure, et cetera.
>
> That testimony was not allowed in. And we believe that testimony should be allowed in. So, whether it's the document itself as a whole, or it's just the testimony relying upon the document, we think that they should be at least be able to rely upon it.[10]

In sum, Shoemake fails to either cite any authority or persuasively argue why the court was required to admit the MSDSs as exhibits rather than merely allowing the expert witnesses to testify on the basis of them.

*Expert Testimony*

Shoemake also argues that the court abused its discretion by excluding expert testimony on the MSDSs. This argument is unsupported by the record.

As explained earlier, the superior court ruled that Shoemake's experts could testify about the MSDSs to explain the basis of their opinions. And the jury

---

[9] Report of Proceedings (June 5, 2014) at 24.

[10] Id. at 24-25.

subsequently heard her experts testify about the MSDSs and the bases of their opinions.

For example, Dr. Firestone testified about a certain MSDS as follows:

[Counsel:] I'm handing you another document. Can you tell us what that's an MSDS of?

[Dr. Firestone:] This looks like an adhesive of 3M. They're a Scotch grip. It contains spirits and solvents, acetone, toluene, methyl ethyl ketone. And then I guess there is butadiene acrylonitrile rubber.

[Counsel:] And, Dr. Firestone, based on the MSDS as well as your experience, what if any of these ingredients that are contained in this product are of concern if someone is exposed to this product?

[Dr. Firestone:] Again, it's the solvents. Acetone. We can all relate to if you've ever removed nail polish or been in a nail salon. Acetone, tuolene is also a common solvent in those industrial contents. Those have a very pungent sort of noxious smell to them, so that they can be readily perceived even at relatively low concentration, cause irritation of the mucus membrane.

[Counsel:] And that was going to be my next question. What then would be the result of that exposure? What would you expect medically for exposure?

[Dr. Firestone:] Again, I think the most common presentation or experience the person would be an irritation of the eyes, nose, throat, sore throat, dry scratchy eye. People described it in different ways. But nasal congestion rhinorrhea, rhionora (phonetic) excuse me. Post nasal drip, itchy red eyes. That would be the most typical experience of a lower end exposure. With again, with sustained prolonged exposures at the lower end, or with a higher exposure even in the shorter timeframe, you can develop neurological symptoms of dizziness, headache, nausea and beyond.[11]

Dr. Amman similarly testified:

[Counsel:] Doctor Amman, please look at this [MSDS]. Same sort of questions with this product. First of all, what is your product—

---

[11] Report of Proceedings (June 10, 2014) at 201-03.

what is the product being used? What is your concern for anyone for people in the area where the product is being used?

[Dr. Amman:] The ingredients of this enamel paint are a lot of very strong, odorous volatiles within this that tend to persist for a very long period of time in the air. And these are—this is not spray so much. I don't know whether this was sprayed. Even if it were painted on it, the volatiles would stay in the air for quite a long period of time. And because they are gases. Gases travel through any opening doors, openings in the walls, and so on. In the surrounding area people would be able to smell, and if they smell then the substance is present.

[Counsel:] And what about if you're not the person using it, but a passer-by?

[Dr. Amman:] Well, passer-by, if you're just briefly there, you might get a small dose. If you're in the area working you—you get some exposure that people who are applying it get.[12]

The trial court excluded only a small part of Dr. Amman's testimony where she simply read an MSDS into the record. The court ruled that Dr. Amman could testify to her conclusions about the possible effects of the chemicals listed on the MSDSs, based on her experience and expertise. But the court excluded a portion of her testimony where she read an MSDS without offering opinions or conclusions on it. This was a proper exercise of discretion.

*Exclusion of Lay Witness Testimony*

Shoemake argues that the court erroneously excluded the testimony of two lay witnesses, who stated that they had also suffered symptoms during Eli Lilly's remodel. We again disagree.

---

[12] Report of Proceedings Vol. I (June 11, 2014) at 10.

Shoemake argued that this testimony was admissible under Intalco Aluminum v. Department of Labor & Industries.[13] In that case, one expert witness testified that, after years of treating similar workers, he had never seen another worker experience the claimants' symptoms.[14] "This testimony invited the jury to conclude that . . . the claimants' disease must not be work related."[15]

To rebut this testimony, the trial court allowed other workers to testify that they had experienced and observed similar symptoms.[16] Additionally, the court instructed the jury that this testimony was for the sole purpose of determining whether other workers in the industry suffered similar symptoms, not to determine whether these workers had the same medical conditions as the claimants.[17]

Here, the superior court determined that this case was not analogous to Intalco because Shoemake did not offer her coworkers' testimony as rebuttal. This ruling was correct.

In Intalco, the evidence was relevant only because the expert witness stated that he had never seen workers with such symptoms, implying that the working conditions could not cause such symptoms. In Shoemake's case, there was no such suggestion.

---

[13] 66 Wn. App. 644, 833 P.2d 390 (1992).

[14] Id. at 665.

[15] Id.

[16] Id. at 664-65.

[17] Id. at 665.

Shoemake argues that this evidence was relevant because her own expert had testified that it was important to learn whether other people had complained about similar symptoms. But bolstering her own expert witness's testimony is fundamentally different from rebutting a specific statement made by an opposing expert witness. The trial court properly excluded this irrelevant lay testimony.

## JURY INSTRUCTION & COMMENT ON EVIDENCE

Shoemake argues that the court gave an improper jury instruction and commented on the evidence. We disagree.

*Jury Instruction*

"Jury instructions are generally sufficient if they are supported by the evidence, allow each party to argue its theory of the case, and when read as a whole, properly inform the trier of fact of the applicable law."[18]

Under CR 51(f), parties must raise any objections to jury instructions before the court instructs the jury. "The objector shall state distinctly the matter to which counsel objects and the grounds of counsel's objection."[19] This requirement allows the trial court the opportunity to correct any alleged error.[20] Appellate courts consider arguments on jury instructions only if they were sufficiently raised before the trial court.[21]

---

[18] Fergen v. Sestero, 182 Wn.2d. 794, 803, 346 P.3d 708 (2015).

[19] CR 51(f).

[20] Van Hout v. Celotex Corp., 121 Wn.2d 697, 703, 853 P.2d 908 (1993).

[21] Id. at 702.

Here, Shoemake objected to the following instruction:

> Claims based on mental conditions or mental disabilities caused by stress do not fall within the definition of an occupational disease.
>
> Examples of mental conditions or mental disabilities caused by stress that do not fall within occupational disease shall include, but are not limited to, those conditions and disabilities resulting from:
>
> > Work load pressures,
> >
> > Subjective perceptions of employment conditions or environment, or
> >
> > Fear of exposure to chemicals, radiation biohazards, or other perceived hazards.[22]

At trial, Shoemake objected to this instruction on a single basis: that it was taken from the Department's guidelines, which are not legal authority.

On appeal, Shoemake concedes that this instruction accurately quotes WAC 296-14-300. Instead, she argues that this instruction is inappropriate under the facts of this case. Specifically, she argues that it was undisputed that Shoemake was exposed to some amount of chemicals, so this instruction is inappropriate.

Because Shoemake failed to raise this objection before the trial court, depriving it of the opportunity to correct the alleged error, she did not preserve this issue for review. We decline to address it further.

---

22 Clerk's Papers at 356.

*Comment on the Evidence*

Shoemake also argues that this instruction was an improper comment on the evidence because it suggested that she suffered only from fear of exposure rather than actual exposure. This argument is unpersuasive.

Article IV, section 16 of the Washington constitution prohibits judges from commenting on the evidence. A court does so "if the court's attitude toward the merits of the case or the court's evaluation relative to the disputed issue is inferable from the statement."[23]

A proper jury instruction is not a comment on the evidence.[24] But if an instruction "essentially resolve[s] a contested factual issue" then it is an improper comment on the evidence.[25]

Here, the court's instruction does not imply that Shoemake suffered from fear of exposure. It merely informs the jury that if she suffered from only fear of exposure, that injury is not an occupational disease. Accordingly, the court did not resolve a factual issue or comment on the evidence.

## ATTORNEY FEES

Shoemake argues that she is entitled to attorney fees on appeal. We decline to award appellate attorney fees because she is not entitled to them.

---

[23] State v. Lane, 125 Wn.2d 825, 838, 889 P.2d 929 (1995).

[24] State v. Brush, 183 Wn.2d 550, 557, 353 P.3d 213 (2015).

[25] Id.

In Washington, parties may recover attorney fees if a statute, contract, or recognized ground of equity authorizes the award.[26] RCW 51.52.130 provides for an award of attorney fees on appeal when the court reverses a BIIA order, granting the worker additional relief.

Here, we affirm the superior court's judgment that affirmed the BIIA's decision. Thus, Shoemake is not entitled to attorney fees on appeal.

We affirm the superior court's judgment on the jury verdict.

Cox, J.

WE CONCUR:

---

[26] LK Operating, LLC v. Collection Grp., LLC, 181 Wn.2d 117, 123, 330 P.3d 190 (2014).