# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

ANDREA ERICKSON, an individual, )
            )
     Appellant, )
            )
     v. )
            )
JAMES HOLSTINE, D.O.; JAMES D. )
HOLSTINE D.O., P.L.L.C., a )
Washington corporation; and )
PEACEHEALTH d/b/a PEACEHEALTH )
MEDICAL GROUP, a Washington )
non-profit corporation, )
            )
        Respondents. )

No. 74816-5-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: December 18, 2017

TRICKEY, A.C.J. — Andrea Erickson filed a medical negligence claim against PeaceHealth d/b/a PeaceHealth Medical Group, Dr. James Holstine, and James D. Holstine D.O., PLLC (collectively, PeaceHealth). The trial court denied Erickson's motion for summary judgment and motion to strike an untimely expert's declaration. The jury found that Dr. Holstine was not negligent. Erickson appeals various evidentiary decisions of the trial court and its denial of her motions for summary judgment, judgment notwithstanding the verdict, and judgment as a matter of law. Finding no error, we affirm.

## FACTS

In March 2010, Erickson sought treatment at PeaceHealth Medical Group for work-related left shoulder pain. Erickson was referred to Dr. Kenneth Oates and Dr. Holstine for orthopedic opinions. Both recommended arthroscopic subacromial decompression surgery.

In April 2010, Dr. Holstine operated on Erickson's left shoulder to remove a portion of Erickson's acromion bone.

On May 8, 2010, Erickson heard a pop in her left shoulder while she was reaching for scissors, which was followed by severe pain. On May 11, Erickson saw Dr. Michael Geist, her primary care physician, and told him that her shoulder felt like it was broken. Dr. Geist referred Erickson to Dr. Holstine. Dr. Holstine believed that the pop was caused by postoperative inflammation and referred Erickson to physical therapy. The physical therapy was ineffective.

In June 2010, Erickson was seen by Physician's Assistant Judson Moore. Erickson informed Moore that other doctors had told her that she should have an MRI (magnetic resonance imaging) or an X-ray. Dr. Holstine ordered that an MRI be taken, and relied on the radiologist's report to conclude that postoperation inflammation likely caused Erickson's shoulder pain.

In August 2010, Erickson had another appointment at PeaceHealth Medical Group. Erickson was experiencing moderate to serious pain daily. Dr. Holstine administered a cortisone shot to Erickson's left shoulder but did not order an X-ray.

In October 2010, Erickson saw Dr. Oates for a second opinion. Dr. Oates ordered an X-ray and determined that there was a potential acromial fracture "due to aggressive acromioplasty."[1] Dr. Oates ordered a CT (computed tomography) scan, which confirmed that Erickson had an acromial fracture. In March 2011, Erickson had surgery to treat the fracture.

---

[1] Ex. 11 at 1-2.

2

In April 2013, Erickson filed a complaint against PeaceHealth for medical negligence. On June 12, 2015, PeaceHealth notified Erickson that Dr. Richard Kirby would testify that Dr. Holstine's actions met the standard of care.[2]

On September 14, 2015, Erickson moved for summary judgment. The summary judgment hearing was set for October 12. Erickson submitted the expert opinion of Dr. Steven Graboff in support of her motion, which stated that Dr. Holstine's surgery and postoperative care fell below the standard of care. In its response to Erickson's motion, filed October 1, PeaceHealth stated that it was relying on Dr. Kirby's declaration and quoted several passages from it. Erickson's reply to PeaceHealth's response, filed October 7, noted that PeaceHealth had not submitted an opposing expert declaration with its response to her summary judgment motion. On October 8, PeaceHealth filed and served Dr. Kirby's declaration, which stated that Dr. Holstine acted in conformity with the standard of care.

On October 9, Erickson moved to strike Dr. Kirby's declaration as untimely and unresponsive to Dr. Graboff's opinions. PeaceHealth did not file a response. The trial court struck Dr. Kirby's declaration, but withdrew its order on the same day.

The trial court denied Erickson's motion for summary judgment. In its decision, it declined to strike Dr. Kirby's declaration.

At trial, Dr. Graboff testified that, to comply with the standard of care, Dr.

---

[2] PeaceHealth claims that it "informally offered the defense orthopedic expert for deposition roughly one year before trial, when counsel for both parties attended the deposition of" Dr. Steven Graboff. Br. of Resp'ts at 6. PeaceHealth does not provide a citation in support of this claim.

Holstine should have taken X-rays and conducted a physical examination when he saw Erickson in May 2010. Dr. Graboff explained that an MRI was insufficient, and that physical therapy and cortisone injections are not appropriate treatments for a fracture. Dr. Graboff also testified that the scientific literature that Dr. Kirby based his opinion on did not support his medical testimony.

Dr. Kirby testified that X-rays could be required to properly measure a patient's postoperative progress and agreed that a fractured acromion could be a complication of Erickson's procedure. But Dr. Kirby stated that Dr. Holstine's work had met the standard of care, and that the fracture was unusual because it had occurred in a thicker part of the bone. Dr. Kirby also testified that an MRI is the best test to order after the procedure Erickson went through to diagnose the most common causes of postoperative pain.

The jury found that Dr. Holstine was not negligent in his treatment of Erickson. The trial court denied Erickson's subsequent motions for a new trial and for judgment as a matter of law.

Erickson appeals.

## ANALYSIS

### Admission of Dr. Kirby's Declaration

*CR 6(b)(2)*

Erickson argues that the trial court abused its discretion when it admitted Dr. Kirby's untimely declaration because PeaceHealth did not file a written CR 6(b)(2) motion showing excusable neglect. We conclude that PeaceHealth's

4

argument in support of admitting Dr. Kirby's declaration at the summary judgment hearing satisfied CR 6(b)(2).

When a party shows that its failure to file a document on time is due to excusable neglect, the trial court may grant the party's motion to file the document after the time has expired. CR 6(b)(2). This rule furthers "the civil rules' purpose of ensuring the trial court justly, speedily, and inexpensively determines every action, preferably on the merits rather than technicalities." Keck v. Collins, 181 Wn. App. 67, 84, 325 P.3d 306 (2014), aff'd, 184 Wn.2d 358, 357 P.3d 1080 (2015).[3]

In Keck, the appellants did not explicitly cite CR 6(b)(2) when they requested the trial court's permission to file a late affidavit in response to the respondents' summary judgment motion. 181 Wn. App. at 84 n.6. The respondents filed a motion to strike the late affidavit, which the trial court granted. Keck, 181 Wn. App. at 77, 83. The Court of Appeals concluded that the appellants' failure to cite CR 6(b)(2) was not a procedural bar against their late filing. Keck, 181 Wn. App. at 84 n.6. The Court of Appeals stated that the appellants had invoked CR 6(b)(2) by requesting the trial court's permission to file a late affidavit and briefing the issue in their motion to reconsider. Keck, 181 Wn. App. at 84 n.6. It also noted that the respondents' motion to strike necessarily implicated CR 5(d)(2) and CR 6(b)(2) because "these rules are inextricably intertwined in the trial

---

[3] The Washington Supreme Court upheld the Court of Appeal's decision in Keck, but did not address CR 6. See Keck v. Collins, 184 Wn.2d 358, 357 P.3d 1080 (2015). The Washington Supreme Court's decision will be discussed further below in the context of trial courts' application of the Burnet factors before excluding untimely evidence in response to summary judgment.

5

court's decision on whether to consider or not consider" the affidavit. Keck, 181 Wn. App. at 84 n.6.

"Trial courts have discretion whether to accept untimely filed documents." Colorado Structures, Inc. v. Blue Mountain Plaza, LLC, 159 Wn. App. 654, 660, 246 P.3d 835 (2011). "Discretion is abused when it is exercised on untenable grounds or for untenable reasons." Colorado Structures, Inc., 159 Wn. App. at 660.

Here, at the summary judgment hearing, the parties addressed PeaceHealth's failure to file a motion to enlarge time pursuant to CR 6(b)(2). Erickson stated that CR 6 required PeaceHealth to file a motion showing excusable neglect, and that PeaceHealth had not done so for tactical reasons. PeaceHealth responded that it was making an oral motion under CR 6 because it had not had an opportunity to submit a motion in writing due to the condensed timeframe. PeaceHealth offered to submit additional briefing if the trial court was unsatisfied with oral argument.

The trial court did not abuse its discretion when it accepted PeaceHealth's arguments at the summary judgment hearing as an oral motion to enlarge time under CR 6(b)(2). PeaceHealth's oral arguments addressed CR 6(b)(2)'s element of excusable neglect. PeaceHealth presented its arguments to the trial court shortly after Erickson filed her motion to strike, and made the same arguments as it would have if it had filed a written motion. Therefore, we conclude that PeaceHealth complied with CR 6(b)(2) when it presented oral arguments establishing excusable neglect at the summary judgment hearing.

*Consideration of Burnet Factors*

Erickson argues that the trial court abused its discretion when it denied her motion to strike Dr. Kirby's untimely declaration. PeaceHealth responds that the trial court properly applied the Burnet factors to determine that striking Dr. Kirby's declaration for summary judgment was unnecessary. See Burnet v. Spokane Ambulance, 131 Wn.2d 484, 933 P.2d 1036 (1997). We agree with PeaceHealth.

Before excluding untimely disclosed evidence that would affect a party's ability to present its case, a court must consider the Burnet factors of "whether a lesser sanction would probably suffice, whether the violation was willful or deliberate, and whether the violation substantially prejudiced the opposing party." Keck, 184 Wn.2d at 368-69; see Burnet, 131 Wn.2d at 490-91.

A trial court's decision to strike or allow a declaration on summary judgment is reviewed for abuse of discretion. Keck, 184 Wn.2d at 368-69. Failure to consider the Burnet factors before striking evidence submitted in response to a summary judgment motion is an abuse of discretion. Keck, 184 Wn.2d at 361-62.

Here, the trial court considered the Burnet factors in deciding whether or not to strike Dr. Kirby's declaration at summary judgment. The trial court stated that it accepted PeaceHealth's claim that its failure to include Dr. Kirby's declaration in its reply was inadvertent, not willful or deliberate. This conclusion was supported by PeaceHealth's inclusion of excerpts from Dr. Kirby's declaration in its response to Erickson's motion for summary judgment and Dr. Kirby's' signing of the declaration on September 22, although PeaceHealth sent it to Erickson on October 8.

The trial court also determined that Erickson was not prejudiced by the untimely filing because she was aware that Dr. Kirby may be called as an expert witness for PeaceHealth, and because Erickson argued to the trial court that the declaration did not say anything substantive. The trial court then found that a lesser sanction was available in the form of making Dr. Kirby available for a deposition by Erickson, with the costs borne by PeaceHealth.

Thus, the trial court considered each Burnet factor and determined that striking Dr. Kirby's untimely declaration was unnecessary. Therefore, we conclude that the trial court did not abuse its discretion when it declined to strike Dr. Kirby's untimely declaration.

Erickson argues that PeaceHealth has not offered any evidence of excusable neglect other than counsel's argument, and thus, the trial court abused its discretion when it declined to strike Dr. Kirby's declaration. Argument by counsel is not evidence. Strandberg v. N. Pac. Ry. Co., 59 Wn.2d 259, 265, 367 P.2d 137 (1961). But Erickson is not correct about the record. At the summary judgment hearing, PeaceHealth pointed out that its response to Erickson's motion for summary judgment, dated October 1, 2015, included excerpts of Dr. Kirby's declaration. Moreover, Dr. Kirby's declaration was signed and dated on September 22, 2015, although it was sent to Erickson on October 8. Thus, PeaceHealth does not rely solely on counsel's argument. Rather, the record supports PeaceHealth's assertion that it was prepared to provide Dr. Kirby's declaration with its response to Erickson's motion for summary judgment. We reject Erickson's argument.

*Substantial Evidence*

Erickson argues that the trial court's findings regarding the timeliness of Dr. Kirby's declaration are not supported by substantial evidence. We conclude that the record contains substantial evidence supporting the trial court's findings.

When a trial court has weighed the evidence, an appellate court's review is limited to "determining whether substantial evidence supports the findings and, if so, whether the findings in turn support the trial court's conclusions of law and judgment." Ridgeview Props. v. Starbuck, 96 Wn.2d 716, 719, 638 P.2d 1231 (1982). "Substantial evidence is evidence in sufficient quantum to persuade a fair-minded person of the truth of the declared premise." Ridgeview Props., 96 Wn.2d at 719.

Here, the trial court's findings are supported by substantial evidence in the record. First, PeaceHealth established that its delay was inadvertent, and demonstrated excusable neglect and reasonable justification. Dr. Kirby's declaration was signed and dated on September 22, 2015. PeaceHealth's response to Erickson's motion for summary judgment, filed on October 1, stated that it was relying on Dr. Kirby's declaration and included excerpts of the declaration. PeaceHealth sent Dr. Kirby's declaration to Erickson on October 8, immediately after learning of its error. Thus, there is substantial evidence in the record supporting the trial court's findings that PeaceHealth's failure to file Dr. Kirby's declaration on time was inadvertent and due to excusable neglect, and that PeaceHealth was reasonably justified in its delay.

Second, the trial court's finding that Erickson was not prejudiced by the timing of Dr. Kirby's declaration or discovery deposition is supported by substantial evidence. In June 2015, PeaceHealth notified Erickson that Dr. Kirby would be testifying that Dr. Holstine's actions met the standard of care and would rebut issues raised by Erickson's experts. The summary judgment hearing was not held until October 2015. Moreover, Erickson was provided with the declaration only seven days after PeaceHealth's response to Erickson's motion for summary judgment had been filed. Thus, Erickson was on notice that Dr. Kirby would be testifying, and there was not a substantial delay between when Erickson should have received Dr. Kirby's declaration and when she actually received it. Therefore, substantial evidence in the record supports the trial court's finding that Erickson was not substantially prejudiced.

Third, the trial court's finding that lesser sanctions were available was supported by substantial evidence. The trial court ordered that Erickson be allowed to depose Dr. Kirby at PeaceHealth's expense in Bellingham or Seattle. Making Dr. Kirby available for deposition and shifting the cost to PeaceHealth permitted Erickson to obtain information about the nature of Dr. Kirby's testimony without incurring additional costs, and is a less serious sanction than striking the declaration entirely because much of PeaceHealth's case relied on Dr. Kirby's testimony. Thus, the trial court's finding that there was a less serious sanction available is supported by substantial evidence in the record.

In sum, each of the trial court's findings supporting its decision to deny Erickson's motion to strike Dr. Kirby's untimely declaration was supported by substantial evidence. We reject Erickson's argument.

### Factual Foundation of Dr. Kirby's Declaration

Erickson argues that the trial court erred in granting summary judgment because Dr. Kirby's declaration was not supported by sufficient factual information and foundation to create a genuine issue of material fact. PeaceHealth responds that Dr. Kirby's declaration contained sufficient factual foundation to be admissible and raise a genuine issue of material fact. We agree with PeaceHealth.

Generally, in medical negligence cases, expert medical testimony is required to establish whether or not the injury was proximately caused by a medical professional's failure to meet the standard of care. Seybold v. Neu, 105 Wn. App. 666, 676, 19 P.3d 1068 (2001). The plaintiff must produce such medical expert testimony establishing proximate causation between the injury and a failure to comply with the applicable standard of care to avoid summary judgment. Seybold, 105 Wn. App. at 676.

"[T]he expert testimony must be based on facts in the case, not speculation or conjecture." Seybold, 105 Wn. App. at 677. "Affidavits containing conclusory statements without adequate factual support are insufficient to defeat a motion for summary judgment." Guile v. Ballard Cmty. Hosp., 70 Wn. App. 18, 25, 851 P.2d 689 (1993).

This court reviews a trial court's evidentiary rulings for summary judgments de novo. Seybold, 105 Wn. App. at 678.

Here, Dr. Kirby's declaration contains sufficient factual foundation to be admissible and to create a genuine issue of material fact precluding summary judgment. Dr. Kirby stated that he had extensive medical training and experience with shoulder surgery procedures, and had reviewed Erickson's key medical records and the images of her shoulder.

Dr. Kirby declared that Dr. Holstine's preoperative care, surgery, and postoperative care met the standard of care. He stated that his reasons included his conclusion that Erickson met the criteria for arthroscopic surgery, the operative note showed that the procedure was uneventful, pain and popping are common in the early postoperative period and do not necessarily require additional imaging, and fractures could occur naturally at the location where Erickson's appeared. Dr. Kirby declared that Erickson's continuing pain and other problems were likely due to unrelated comorbidities.

Dr. Kirby's declaration is based on the facts of the present case. His opinions were based on his extensive medical experience and the medical records provided to him regarding Erickson's medical history and the surgical procedure. Therefore, we conclude that Dr. Kirby's declaration contained sufficient factual foundation to be admissible and to create a genuine issue of material fact precluding summary judgment.

### Dr. Kirby's Expert Trial Testimony

Erickson argues that the trial court abused its discretion when it allowed Dr. Kirby to testify at trial because his testimony was not based on valid scientific principles. PeaceHealth responds that the trial court did not abuse its discretion

because Dr. Kirby was qualified as an expert under ER 702. We agree with PeaceHealth.

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." ER 702.

Under ER 702, the admissibility of expert testimony "depends upon whether (1) the witness qualifies as an expert, (2) the opinion is based upon on explanatory theory generally accepted in the scientific community, and (3) the expert testimony would be helpful to the trier of fact." State v. Allery, 101 Wn.2d 591, 596, 682 P.2d 312 (1984). Expert testimony is helpful to the trier of fact "if it concerns matters beyond the common knowledge of a layperson and does not mislead the jury." State v. King County Dist. Court W. Div., 175 Wn. App. 630, 638, 307 P.3d 765 (2013).

Expert medical testimony must be based on the facts of the case, not speculation, and be based on a reasonable degree of medical certainty. Hill v. Sacred Heart Med. Ctr., 143 Wn. App. 438, 448, 177 P.3d 1152 (2008). "If the expert's opinion assumes the existence of conditions or circumstances not of record, its validity dissolves and the answer must be stricken." Tokarz v. Ford Motor Co., 8 Wn. App. 645, 653, 508 P.2d 1370 (1973).

A trial court's qualification of an expert is reviewed for abuse of discretion. Tokarz, 8 Wn. App. at 653.

Here, Dr. Kirby is an orthopedic surgeon specializing in shoulder issues with over 30 years of experience. Prior to testifying, Dr. Kirby reviewed substantial information relevant to Erickson's injury, including records from her family doctor, a psychiatrist, Dr. Holstine, and Dr. Oates, along with X-rays of her shoulder. At trial, Dr. Kirby testified that Dr. Holstine had complied with the standard of care in performing the procedure and in treating Erickson's postsurgery complications. Dr. Holstine's surgical methodology, its possible effects, and which posttreatment measures are appropriate to address complications are likely outside of the knowledge of the jury, and thus, Dr. Kirby's testimony would be helpful.

Dr. Kirby's testimony satisfies ER 702's requirements. He was an established medical professional specializing in the field at issue in this case. His opinion was based on Erickson's relevant medical records and his own experience as a specialist in this area, and was based on established methodologies used in the field. Dr. Kirby's testimony was helpful to the jury because these issues are not within the common knowledge of lay people. Therefore, we conclude that the trial court did not abuse its discretion in admitting Dr. Kirby's testimony as an expert opinion.

Erickson argues that Dr. Kirby's opinion lacked sufficient factual information or foundation to support his opinions because he admitted that he did not read all of the medical literature that he claimed he used to reach his conclusions. This misstates the record. Dr. Kirby testified that he had read only the abstracts of several medical articles that he mentioned in his deposition testimony. But at trial, he also testified about his extensive medical training, specialization in the field of

shoulder injuries, and review of Erickson's medical records. The fact that Dr. Kirby read only the abstracts of several of the medical articles discussed at his deposition is insufficient to demonstrate that his opinion at trial lacked factual information and support. We reject this argument.

Erickson also argues that the trial court abused its discretion when it admitted Dr. Kirby's testimony because it was based on "junk science" and prohibited under Frye v. United States, 54 App. D.C. 46, 293 F. 1013 (1923). PeaceHealth responds that Frye is inapplicable because Dr. Kirby's testimony was based on his professional experience and knowledge, rather than novel science. We agree with PeaceHealth.

In Washington, the Frye test examines "(1) whether the scientific theory upon which the evidence is based is generally accepted in the relevant scientific community, and (2) whether the technique used to implement that theory is also generally accepted by that scientific community." State v. Gentry, 125 Wn.2d 570, 585, 888 P.2d 1105 (1995).

Testimony that does not involve new methods of proof or scientific principles to reach its conclusions is not subject to the Frye test. State v. Ortiz, 119 Wn.2d 294, 311, 831 P.2d 1060 (1992); see also State v. Phillips, 123 Wn. App. 761, 766, 98 P.3d 838 (2004).

"Questions of admissibility under Frye are reviewed de novo." Anderson v. Akzo Nobel Coatings, Inc., 172 Wn.2d 593, 600, 260 P.3d 857 (2011).

Here, Frye is inapplicable because Dr. Kirby's testimony did not rely on a novel method of proof or scientific principle to reach his conclusions. As discussed

above, Dr. Kirby based his testimony on his medical training, experience as an orthopedic surgeon specializing in shoulder issues, and review of Erickson's medical history. He did not state that he was relying on novel methods or principles to reach his conclusions. Thus, Dr. Kirby's testimony did not require a Frye analysis and we reject Erickson's argument.[4]

## Jury Instruction on Standard of Care

*Error of Law*

Erickson argues that the trial court erred when it gave the jury an instruction that misstated the applicable standard of care. PeaceHealth responds that the trial court properly provided the instruction as a supplemental instruction to the general standard of care instruction. We agree with PeaceHealth.

"The most critical element of most medical malpractice claims based on negligence . . . is the standard of care owed by the doctor to his or her patient." Watson v. Hockett, 107 Wn.2d 158, 162, 727 P.2d 669 (1986). If a trial court properly instructs the jury on the applicable standard of care, it may also supplement its standard of care instruction with additional instructions. Watson, 107 Wn.2d at 166-67.[5] While these supplemental instructions may clarify the standard of care instruction, they do not change it. Watson, 107 Wn.2d at 166.

---

[4] Erickson's arguments dispute the validity of Dr. Kirby's conclusions, rather than his scientific methodology or principles. See, e.g., Appellant Erickson's Opening Br. at 39-38 (For example, "It cannot be seriously 'argued' that medical science believes it is acceptable to fail to diagnose a broken bone."). Erickson's arguments are not relevant to showing that Dr. Kirby used novel scientific methods or principles to reach his conclusions, or that these conclusions are novel to the scientific community.

[5] These include "'no guarantee,'" "'bad result,'" and "'error in judgment'" instructions. Watson, 107 Wn.2d at 166; see also Miller v. Kennedy, 91 Wn.2d 155, 157-60, 588 P.2d 734 (1978).

The *Washington Pattern Jury Instructions* provides an exercise of judgment instruction:

> A physician is not liable for selecting one of two or more alternative [courses of treatment] [diagnoses], if, in arriving at the judgment to [follow the particular course of treatment] [make the particular diagnosis], the physician exercised reasonable care and skill within the standard of care the physician was obliged to follow.

6 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 105.08 (6th ed. 2012) (WPI) (boldface omitted) (alterations in original). WPI 105.08 has been approved of as a proper supplemental instruction to the standard of care in medical negligence cases. See Fergen v. Sestero, 182 Wn.2d 794, 803-06, 812, 346 P.3d 708 (2015).

An appellate court reviews alleged errors of law in jury instructions de novo. Anfinson v. FedEx Ground Package Sys., Inc., 174 Wn.2d 851, 860, 281 P.3d 289 (2012).

Here, the trial court's instruction 11 instructed the jury on the general standard of care for health care professionals. The trial court's instruction 13 provided:

> An orthopedic surgeon is not liable for selecting one of two or more alternative courses of treatment or diagnoses, if, in arriving at the judgment to follow the particular course of treatment or make the particular diagnosis, the orthopedic surgeon exercised reasonable care and skill within the standard of care the orthopedic surgeon was obliged to follow.[6]

Instruction 13 uses the language of WPI 105.08. It supplements the general standard of care instruction provided by the trial court in instruction 11 to inform the jury of the interaction between a medical professional's exercise of judgment

---

[6] Clerk's Papers (CP) at 1096.

and the general standard of care. Erickson has not argued that instruction 11 misstated the standard of care applicable to Dr. Holstine. Therefore, the trial court did not err by supplementing instruction 11's general standard of care language with instruction 13's exercise of reasonable care and skill language.

Erickson argues that instruction 13 misstates the law of Washington because differential diagnoses, processes by which physicians rule out potential causes of an injury, are part of the standard of care in Washington, relying on Anderson, 172 Wn.2d at 610. Erickson also argues that Dr. Kirby, Dr. Holstine, and Dr. Graboff testified that a differential diagnosis is part of the standard of care.

These arguments are unpersuasive. The passage of Anderson that Erickson relies on concerns the use of differential diagnoses in determining medical causation, not the standard of care applicable to medical negligence cases. Further, this argument is irrelevant to whether the trial court erred by instructing the jury on an orthopedic surgeon's exercise of reasonable care and skill. Finally, Erickson did not request a jury instruction that would have told the jury that a differential diagnosis was required to meet the standard of care.

In sum, Erickson has not demonstrated that the law of Washington requires a healthcare professional to conduct a differential diagnosis or that the trial court erred when it did not give the jury an instruction that Erickson did not request. We reject her arguments.

*Substantial Evidence*

Erickson argues that the trial court erred when it gave the jury instruction 13 because the instruction was not supported by substantial evidence in the record.

18

PeaceHealth argues that Dr. Holstine's testimony contained substantial evidence to support instruction 13. We agree with PeaceHealth.

"Whether or not to give a particular instruction is a matter within the discretion of the trial judge." Seattle W. Indus., Inc. v. David A. Mowat Co., 110 Wn.2d 1, 9, 750 P.2d 245 (1988). But "[i]f a party's case theory lacks substantial evidence, a trial court must not instruct the jury on it." Fergen v. Sestero, 174 Wn. App. 393, 397, 298 P.3d 782 (2013), aff'd, 182 Wn.2d 794, 346 P.3d 708 (2015). To be sufficient to support a jury instruction, a party's case theory must be supported by evidence "ris[ing] above speculation and conjecture." Bd. of Regents of Univ. of Wash. v. Frederick & Nelson, 90 Wn.2d 82, 86, 579 P.2d 346 (1978).

Here, substantial evidence supports instructing the jury about an orthopedic surgeon's exercise of reasonable care and skill. Dr. Holstine testified that he initially decided to wait and see if Erickson's pain would subside. Later, when her pain persisted, Dr. Holstine ordered an MRI because it would show many of the most common complications following Erickson's procedure. He chose not to order a CT scan or an X-ray, as they would not have shown evidence of any of those complications.

Dr. Kirby testified that Dr. Holstine had a choice of treatment options to recommend when Erickson had postoperative pain, including waiting and seeing what happened, conducting an MRI, or taking an X-ray. Dr. Kirby further testified that complaints like Erickson's were common and often resolved on their own, and that an MRI was the most appropriate measure to discover the most likely complications following shoulder procedures like Erickson had undergone.

This testimony constitutes substantial evidence supporting the trial court's decision to give instruction 13 to the jury. Dr. Holstine's and Dr. Kirby's testimony indicated that Dr. Holstine had a number of options when treating Erickson. Further, it indicates that he may have acted within the standard of care when he initially decided to wait and see if her symptoms resolved and later ordered an MRI imaging of her shoulder to determine the cause of her pain. Therefore, there was substantial evidence justifying the trial court's decision to give the jury an instruction about a healthcare professional's exercise of reasonable care and skill when deciding about what course of treatment to pursue.

### Jury Verdict

Erickson argues that the jury's verdict was not supported by substantial evidence and must be reversed. Erickson also argues that the trial court erred in denying her motion for judgment as a matter of law because there is no substantial evidence or reasonable inference capable of sustaining a verdict for PeaceHealth. PeaceHealth responds that substantial evidence in the record supports the jury's verdict. We agree with PeaceHealth.

The Court of Appeals "may overturn the jury's verdict only if it was not [supported by substantial evidence]." Canron, Inc. v. Fed. Ins. Co., 82 Wn. App. 480, 486, 918 P.2d 937 (1996). To be substantial, there must be sufficient evidence to "persuade a rational, fair-minded person of the truth of the premise in question." Canron, Inc., 82 Wn. App. at 486.

"Granting a motion for judgment as a matter of law is appropriate when, viewing the evidence most favorable to the nonmoving party, the court can say, as

a matter of law, there is no substantial evidence or reasonable inference to sustain a verdict for the nonmoving party." <u>Sing v. John L. Scott, Inc.</u>, 134 Wn.2d 24, 29, 948 P.2d 816 (1997).

Here, the jury found that Dr. Holstine was not negligent in his treatment of Erickson. The jury's verdict was supported by substantial evidence. At trial, Dr. Holstine and Dr. Kirby testified about the relevant standard of care and that Dr. Holstine's actions conformed to it. They based their opinions in part on their extensive medical training, experience, and examination of Erickson's medical records. The substantial evidence supporting the jury's verdict contained in the record weighs against granting judgment as a matter of law. Therefore, we conclude that the jury's verdict was supported by substantial evidence and that the trial court did not err in denying Erickson's motion for judgment as a matter of law.

Affirmed.

Trickey, ACJ

WE CONCUR:

Cox, J.